By the Court.—C. P. Daly, Ch. J.*
We are not called upon to decide whether an action against a corporation can be brought in the marine court, or not. The court had jurisdiction of the subject matter of the action, being brought to recover “damages for an injury to rights pertaining to the person” (Laws of 1862, ch. 460); and we held in Paulding v. Hudson Manufacturing Co. (2 E. D. Smith, 38), which was an action in a justice’s court, against a foreign corporation, that as the court had jurisdiction of the subject matter, the defendants, by appearing and answering to the merits, waived an objection as to jurisdiction over the person, that would otherwise have been fatal to the plaintiff’s action; that such a corporation might voluntarily appear and submit itself to the jurisdiction of a justice’s court as well as any other, and that if the court, in such a case, had jurisdiction of the subject matter, its proceedings and judgment therein would be binding upon the defendants ; and in the application of this rule, it makes no difference that the defendants are a corporation under the laws of this State.
In Smith v. Elder (3 Johns., 105,113) the court said, “the defendant had submitted to the jurisdiction of this court, and by pleading a plea in bar, has, in fact, affirmed it, and is, therefore, now precluded from making the objection. To this point the cases are full and explicit.” And see, to the same general effect, Robinson v. West (1 Sandf., 19) and the cases there cited.
The witness Meriam was not called as an expert, nor was the question asked him one calling for the opinion, or the peculiar knowledge or skill of an expert. He was asked if he had noticed the manner of constructing the railroads in this city, and laying the *418 tracks, and did he know what the usual method of laying rails on city railroads is. This was a matter open to the observation and knowledge of any one traversing the public streets of this city or other cities where city railroads are laid, who has seen such roads; who, while they were being laid has observed the mode of constructing them, or observed them after they are laid. A witness may speak to the extent of his information so derived, as this witness did, and no rule of evidence is violated by allowing him to do so. The objection to the question put to the witness Catherwood was equaEy untenable, and the motion to strike out his answer was properly denied. He was an expert, who had been building city railroads for ten years, and had been president of two or three city roads. The prior witnesses of the plaintiff had described very minutely the condition in which they found the rail and the road immediately after the accident occurred ; that the track was sprung up some little distance above the sleeper or string piece, and projected half an inch over the sleeper as the edge of a table projects, with a very sharp edge on the under side of the rail, so that anything coming up from beneath would catch ; that along the rail there was an open space about six inches wide, and just the width of a horse’s foot, not very deep, but sufficient to let the foot down below the rail; that the stone appeared to have settled away, or the open space had spread, as though the stone had settled away; that the condition of the pavement was bad ; and the previous witness had described particularly the kind of rail that was laid down. The witness Cather-wood was asked whether, in his opinion, the rail was properly laid and constructed, to which the defendant objected, upon the ground that there was no evidence that the rail had been put down in the way described by the witness, or, as I understood the objection, that it was incumbent upon the plaintiff to prove how the *419 rail was laid at the time when it was laid ; the best answer to which objection is the reply of the expert, which was this. From the evidence of the witnesses at the time of the accident, the rail was not properly laid and constructed, so that he found no difficulty in giving this very decisive answer, upon the evidence furnished by the preceding testimony of the witnesses.
The motion for a nonsuit was properly overruled. The cause of the accident was not simply the hole into which the horse stepped, which was just broad and deep enough for the animal’s foot to sink into the cavity, but the fact that in drawing it out in such a narrow space, the hoof caught under the very sharp projecting edge of the defendant’s rail, which, as described, was half an inch over the sleeper, like the edge of a table, and which tore the half of the hoof off, leaving it hanging on by the front part, the hind part of the hoof being ripped up. There may have been negligence on the part of the municipal authorities in not paving closely up to the side of the rail. If that had been done, there would have been no open space there, and the accident, according to the plaintiff’s witness, would not, or could not have happened. But if it had not been for the improper way in which the rail was laid and constructed, the horse’s hoof would not have caught in the projecting edge of the rail, producing an injury to the foot so serious and permanent as to render the animal of very little value thereafter, and, in the opinion of a veterinary surgeon, practically worthless. If the rail, as is usual, had been laid even with the sleeper, there would have been no obstruction to the horse’s drawing his foot out again, and no accident whatever might have occurred. But, projecting half an inch over, with a very sharp edge beneath, it was, if not the direct, at least a contributory cause of the injury. It it sufficient that the negligence of the defendants co-operated in producing the accident (Mott v. Hudson River R. R. *420 Co., 8 Bosw., 345; Brehm v. Great Western Railway Co., 34 Barb., 256; Peck v. Neil, 3 McLean, 22; Lockhart v. Lichtenthaler, 46 Pa. St., 151; Colegrove v. New York & New Haven R. R. Co., 6 Duer, 382 ; S. C., 20 N. Y., 492), which was not only the case here, but it was the principal cause. In addition to which, the railroad company had been empowered by the corporation to take up and replace as much of the pavement of the streets, through which their track runs, as might-be necessary for their purposes, and, by the act of 1860, ch. 511, § 2, authorizing its construction, it was one of the conditions of the enjoyment of the right granted to them that the-railroad should be constructed upon the most approved plan for city railroads ; which, in the judgment of a very competent expert, was not done in this particular place. If they had laid the rail improperly, or, if the rail by use had spread, which, according to the expert, it will sometimes do, it was incumbent upon the defendants to see that no injury would arise therefrom, to those equally entitled with themselves to the use of the public streets, which they dould easily have prevented by exercising the power which they have to take up and replace the pavement; all that was required, in such a case, being, that the pavement should be close up to the rail. It is no excuse, therefore, for them to say, that notwithstanding their negligence, the accident would not have happened if there ha'd not been negligence also, on the part of the municipal authorities, which is substantially what was insisted upon in this case. The judgment should be affirmed.
Robinson and J. F. Daly, JJ., concurred.

Present, C. P. Daly, Ch. J., Robinson and J. F. Daly, JJ.