COLORADO MIDLAND R'Y CO. v. O'BRIEN.

1. THE JURY JUDGES OF THE WEIGHT OF EVIDENCE.— In a civil action triable by jury as a matter of right, if there be evidence tending to establish the plaintiff's cause of action in substance as alleged, the verdict will not be disturbed merely on the ground that there is evidence of an opposite tendency.

2. QUESTIONS OF NEGLIGENCE FOR THE JURY.— "Questions of negligence as well as of contributory negligence, are generally within the province of the jury, which should not be invaded by the courts except in the clearest of cases."

3. A WORKMAN ASSUMES THE ORDINARY RISKS OF HIS EMPLOYMENT.— A person engaging to work in and about the construction of a railroad assumes the ordinary risks of such employment, including the risk of being transported to and from his work on a construction train over a newly-constructed road, and cannot expect the road and road-bed to be in as perfect and safe condition before it is finished as if the same had been completed and opened for public travel.

4. NOTICE OF DEFECT TO UNSKILLED LABORER NECESSARY.— A laborer unskilled in railroad building, even if he has aided in repairing de-

| 16 | 219 |
| 17 | 191 |
| 17 | 504 |

| 16 | 219 |
| 18 | 77 |

| 16 | 219 |
| 20 | 302 |
| 20 | 331 |

| 16 | 219 |
| 21 | 541 |
| 22 | 368 |
| 6a | 251 |

| 16 | 219 |
| 25 | 17 |

| 16 | 219 |
| 26 | 288 |

| 16 | 219 |
| 32 | 174 |
| 32 | 304 |
| 18a | 157 |

| 16 | 219 |
| 20a | 200 |

fects in a newly-constructed road, is not necessarily chargeable with notice of the defective condition of the road-bed.

5. UNUSUAL DANGER — CONTRIBUTORY NEGLIGENCE.— A servant cannot voluntarily and knowingly incur unusual and extraordinary danger at the risk of his master. But if the unusual danger is not apparent to a mind like his, and he does not know nor have the means of knowing it, he may incur such danger under the order of his master or his representative without being guilty of contributory negligence.

6. THE FOREMAN REPRESENTATIVE OF THE RAILROAD COMPANY.— Where in the absence of the superintendent of construction the workmen employed in constructing a railroad are performing their labor under the supervision and direction of a general foreman, who has full power and authority to employ and discharge them, such foreman is in relation to such workmen the representative of the railroad company, and not their fellow-servant.

7. DUTY OF COMPANY CONSTRUCTING RAILROAD.— It is the duty of a company constructing a railroad to employ a competent, skilled person to see to it that its road is reasonably safe for the transportation of its workmen — not necessarily as safe as a road fully completed and equipped for the carriage of passengers, but as safe as the circumstances of the case will reasonably allow.

8. QUESTION OF SKILL PROPER FOR EXPERT WITNESS.— The safety of human life requires that a very high degree of skill and diligence shall be exercised in the construction of railroads to be operated by the dangerous agency of steam. The question whether a railroad has or has not been properly constructed at a certain place for the purposes for which it is being used may be proper for the opinion of an expert witness.

9. QUESTION OF DAMAGES — WHEN FOR JURY.— In actions for personal injuries by loss of limb, the assessment of damages must, within reasonable bounds, be confided to the judgment of the jury.

*Error to District Court of Arapahoe County.*

THIS was an action by Michael O'Brien, plaintiff below, against The Colorado Midland Railway Company, defendant below, to recover damages for personal injuries to the plaintiff, alleged to have been caused by the negligence of the defendant company in operating its railroad. Verdict and judgment were rendered in favor of plaintiff for $13,000. The defendant company brings the case to this court by writ of error.

Mr. A. E. PATTISON and Messrs. ROGERS & CUTHBERT, for plaintiff in error.

Messrs. SULLIVAN & MAY and Mr. C. G. CLEMENTS, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The assignments of error challenge the sufficiency of the evidence to sustain the verdict; they also question the competency of certain evidence admitted, complain of the giving and refusing of certain instructions, and allege that the damages awarded by the jury were excessive, and apparently given under the influence of passion and prejudice.

The principal contention by counsel for plaintiff in error is that the evidence is not sufficient to sustain the verdict. This necessitates a review of the evidence for the purpose of ascertaining its tendency. In actions of this kind, if there be evidence tending to establish the plaintiff's cause of action in substance as alleged, the verdict of the jury will not be disturbed merely on the ground that there is evidence of an opposite tendency. *Hallack v. Stockdale*, 14 Colo. 200; *Rollins v. County Commissioners*, 15 Colo. 103.

At the time of the accident by which plaintiff's injuries were occasioned, the defendant company was engaged in constructing its railroad between Leadville and Aspen in this state. It was in the fall of the year. The line of the road was through a mountainous region; and just before the accident, in September, 1887, it had been storming, and the road-bed in places was water-soaked, soft and muddy. The plaintiff was employed by defendant in and about the construction of its railroad. A day or two before the accident, plaintiff, in company with other workmen, had returned from the end of the track, where they had been at work, to the boarding-camp for shelter.

The evidence shows that one Henry Banker was the head-tracklayer for the defendant company and general foreman under Nelson, the superintendent of construction. Banker

had charge and control of the construction train and of the men who, like plaintiff, were employed by the company in handling and bedding ties, laying track and other work of that kind " at the front," as it was called, and exercised the authority of employing and discharging such workmen. Early in the morning of the day of the accident plaintiff and some of his fellow workmen were disinclined to go to the front.    But Banker ordered them in a peremptory manner to go, saying in substance that they could go to work or get their time and be discharged from employment; that he didn't want any " dudes " on this job at all; that he was " going to be in hell or Aspen by Christmas."

The evidence further shows that the boarding-camp was four or five miles from the end of the track at the time when Banker ordered plaintiff and the other men to go upon the construction train to be taken to their work.    This was the customary way of transporting the men between the boarding-camp and the front.    The train consisted of an engine and tender, a flat-car carrying two large water-tanks holding several hogsheads each, and a flat-car loaded with broad-guage curved steel rails and other material.    The evidence tended to show that there were seventy or eighty rails weighing from six hundred to six hundred and fifty pounds each on the steel car; that forty or fifty men occupied the engine, tender and tank-car; and that over two hundred men were crowded as close together as they could stand upon the car containing the steel rails — as plaintiff expressed it in his testimony, the men were "packed on just as thick as they could possibly be packed;   *   *   *   from two hundred to two hundred and twenty."    Plaintiff also testified that there had been plenty of room for all on the previous trip when he went to the front.    Allowing that the workmen were of average weight, the evidence tends to show that the steel car on the day of the accident was laden with a cargo of human beings, steel rails and other material aggregating at least seventy-five thousand pounds. The carrying capacity of the car was shown to be fifty thousand pounds.

The train thus freighted had proceeded but a short distance toward its destination when it reached a soft, marshy place in the road-bed, where the accident occurred. A fellow workman of plaintiff, who testified that he was on the steel car near plaintiff and near the center of the car, described the accident in his testimony in substance as follows:

"The train had reached a little gulch where there was an embankment, a gradual fill. The train was running about eight miles an hour, down grade. Don't know how much of a grade. To the best of my remembrance, either the car ahead of us or the tank-car or the tender gave a lurch to one side and the track slipped when the iron car came on it. I felt the body of the track, and the car gave a lurch right to one side, and then things tipped right over into the ditch. *The men on the edges of the car had a chance to jump and save themselves, but those that were in the center of the car could not, because of those on the outside; it was impossible for them to save themselves by any means on that iron car.* The engine and tender went off the track, and the tender tipped over, the front trucks of the carload of iron went down in the ditch, the hind trucks remained on the track, the car went slant-ways in the ditch.

"These curved rails were not piled the same as straight steel is. Straight steel as a custom is packed as they call it 'locked,' that is, ball up on one rail and ball down on the other, so if it goes, it goes in a mass. Curved steel is piled one way, together at a time, half a dozen, just as it would happen. Almost all of the steel went off the car. I could not say whether there was any rails on it or not when I got up, the heft of it came off.

"I was caught under the steel and injured — was powerless to help myself, either hand or foot. I was conscious all the time. I was taken out and could see that the cause or occasion of the accident was the track sliding. About two rails-length of this track slipped, more or less, varied from two or three inches up; I don't know exactly the

distance. The farthest part the track had slipped fourteen to eighteen inches anyhow; the track was knocked down off the dump; it slid from these ties, so the ends of these ties sunk into mud and tipped the train off, this way (indicating) the track tipped up.

"I saw O'Brien after the accident, after the steel had come off. His legs were caught fast, his body was free, he could use his hands and arms. I saw O'Brien when he was taken out. His limbs at the time he was taken out resembled a dish-rag. I could see blood all over his pants and masses of raw flesh under his overalls, and blood where his overalls were torn by this iron, and I could see where his garments were gone, his legs were all crushed up. After he got out it looked to me as if they were literally ground to pieces, bone, flesh and muscle all mingled together."

The plaintiff's testimony corroborated that of his fellow workman in most particulars.

There was a curve in the road at the place where the accident occurred, though the testimony in behalf of plaintiff was not altogether clear or consistent as to the degree of the curvature. There was a conflict of evidence as to the condition of the road, the loading of the train, and other matters relating to the supposed cause of the accident.

The defendant gave evidence to the effect that plaintiff, under the direction of one Boyle, assistant foreman to Banker, had been employed with others in repairing the road at the place where the accident occurred. Upon this evidence it is contended that plaintiff is precluded from a recovery in this action, on the ground that he had knowledge of the dangerous condition of the road, and that going upon the train with such knowledge was contributory negligence on his part.

According to the testimony of the superintendent of construction, the ground about the place of the accident was "a swamp" and the nature of the material used in the

grade was "what is called peat — soft, boggy material." Even if plaintiff did aid in repairing the road at this place, we are not prepared to hold that a common laborer, unskilled in such matters, as plaintiff was shown to be, was necessarily chargeable with notice of its defective construction so as to make him guilty of contributory negligence in going upon the train in obedience to the order of his superior.

It was the duty of the defendant company to employ a competent engineer or other skilled person to see to it that the road was reasonably safe for the transportation of its workmen,— not necessarily as safe as a road fully completed and equipped for the carriage of passengers, but as safe as the circumstances of the case would reasonably allow. If the road was really dangerous, the defendant company should have exercised reasonable care to ascertain its condition, and have the same repaired before undertaking to transport its employees over it to and from their work.

Plaintiff must be held to have voluntarily assumed all the usual and ordinary dangers incident to his employment; he is not entitled to recover damages resulting from such dangers; nor could he voluntarily and knowingly incur unusual and extraordinary dangers at the risk of his master. But if the unusual danger was not apparent to a mind like his, and he did not know nor have the means of knowing that he was incurring unusual and extraordinary danger in going upon the train, he might obey the orders of his master's representative without being guilty of contributory negligence. A servant is generally excusable for obeying orders in and about his master's business when such orders are given by one in authority over him as a representative of the master, unless the danger to be incurred by such obedience is so plain and manifest that no prudent person would obey even under the penalty of being discharged from employment. *Miller v. U. P. R. R. Co.*, 3 Colo. Law Reporter, 492; *Railroad Co. v. Fort*, 17 Wall. 553.

But in any event the alleged contributory negligence of plaintiff was not under the circumstances a question of law for the court. Plaintiff in his testimony denied having worked upon the road at the point of the accident, and denied any knowledge of its dangerous condition at that place. This conflicting evidence was submitted to the jury under appropriate instructions, and the jury was properly charged as to what would constitute contributory negligence under the circumstances. *Wells v. Coe*, 9 Colo. 159; *Sampson M. & M. Co. v. Schaad*, 15 Colo. 197.

It is unnecessary to set forth the evidence in greater detail. There is nothing in the evidence as certified to this court which would justify the removal of the case from the operation of the general rule that: "Questions of negligence, as well as of contributory negligence, are generally within the province of the jury, which should not be invaded by the courts except in the clearest of cases." Unless there was a clear absence of evidence tending to show that the negligence of the defendant was the proximate cause of the injury, or, unless it was clearly established by the evidence that the negligence of the plaintiff contributed to cause the injury, the verdict of the jury having been given in plaintiff's favor cannot properly be disturbed on either of those grounds. See *Lord v. Pueblo S. & R. Co.*, 12 Colo. 392–94, and the authorities there cited.

It is insisted that the evidence shows that the engine and tender were the first to leave the track, and hence that it was not the overloading of the steel car which caused the accident. Even if this be conceded, the fact still remains that the evidence also tends to show that the crowded condition of the men upon the steel car prevented those, like plaintiff, in the center, from saving themselves when the accident occurred. In confirmation of this it appears that sixty men in all were injured. The surgeon of the company testifies that forty men were so badly injured that they had to be taken to the hospitals at Leadville and Colorado Springs for treatment. Three men, including Banker, who was riding on the engine, were killed.

It is contended that plaintiff was a fellow-servant of Banker; and hence that if Banker was negligent in causing the train to be greatly overloaded with human beings to be transported over a weak and dangerous road-bed, it was but the negligence of a fellow-servant, and gave plaintiff no cause of action.   But the evidence does not show that plaintiff was a fellow-servant of Banker.   As to plaintiff and his co-employees engaged in handling ties and rails and laying track, Banker, having full power and control over them, was the representative of the defendant company; and hence, if he was guilty of negligence in and about the transporting of the workmen, it was the negligence of the company itself.   See opinion of Mr. Justice HAYT in *Denver & S. P. R. Co. v. Driscoll*, 12 Colo. 520, and authorities there cited.   See, also, opinion of Mr. Justice ELBERT in *C. C. R. Co. v. Ogden*, 3 Colo. 503.

Donald W. Campbell, a civil engineer of many years' experience in the construction of railroads, was called as a witness in behalf of plaintiff. · A statement of the supposed condition of the road at the place of the accident, as testified to by plaintiff's witnesses, accompanied by a statement of the use which was being made of the road at the time, was made to the witness Campbell; and he was thereupon asked his opinion as to whether the road was safe or faulty at that place for the purposes for which it was then being used.   This question was objected to: *first*, on the ground that the facts supposed by the question were not supported by the testimony in the case; and *second*, on the ground that the subject of the inquiry was not a proper one for the opinion of an expert witness.

The facts supposed by the terms of the question were fairly within the limits of the evidence already given.   The objection was not well taken on the first ground.   It was for the jury and not for the · court to determine whether the matters assumed as facts by the hypothetical question were or would be ultimately sustained by the evidence as the real facts in the case.

The second ground of objection requires further consideration. The dangerous agency of steam having been utilized as a motive power for the carriage of passengers, the safety of human life necessarily depends in a large measure upon the proper construction and operation of railroads. The law takes cognizance of this necessity, and requires that a very high degree of skill and diligence shall be exercised in such matters. Hence, the determination of the question whether defendant's railroad had or had not been properly constructed for the purposes for which it was being used, required the aid of persons possessing superior scientific knowledge and experience in such matters. The subject-matter of such inquiry was, therefore, proper for the opinion of an expert witness after he had been properly informed as to the facts and circumstances of the case.

No prudent company would engage in the construction of a railroad for the carriage of human beings for any purpose without employing some person or persons having special learning, skill and experience to supervise the work. The defendant company had its civil engineer and superintendent of construction. They were present and testified at the trial, giving their opinions as well as stating facts regarding the character and condition of the road at the place where the accident occurred. Was plaintiff bound to hazard the result of the trial on the testimony of these employees of the defendant company; or, was he entitled to call other witnesses of skill and experience in railroad building, and secure the benefit of their opinions as to the character and condition of the road? There can be but one answer. The question was one of science, skill and experience, and, therefore, proper for the opinion of an expert, based, if necessary, upon a hypothetical question properly framed. Rogers on Expert Testimony, secs. 1–6; *Carpenter v. Central Park R. R. Co.*, 11 Abb. Pr. 416–419; *Muldowney v. Ill. Central R'y Co.*, 36 Iowa, 473.

Upon the whole evidence there can be no doubt that it was the duty of the court below to submit the controversy

to the jury under appropriate instructions. It was clearly a case where the jury must decide as to the questions of negligence and contributory negligence upon proper consideration of the weight of the evidence and the credibility of the witnesses.

Unquestionably, plaintiff, in engaging to work for defendant in and about the construction of its railroad at the front, assumed the ordinary risks of such employment, including the risk of being transported to and from his work on a construction train over a newly-constructed road. Plaintiff could not reasonably expect the road and road-bed of the defendant company to be in as perfect and safe condition before it was finished as if the same had been completed and opened for public travel. Defendant was required to exercise only reasonable care, considering the circumstances and condition of its road, to provide for the safety of plaintiff while riding thereon. Full and explicit instructions to the foregoing effect were given to the jury at the request of defendant's counsel.

The case of *Brick v. Rochester R. R. Co.*, 98 N. Y. 211, states the law very clearly as to the degree of care to be exercised by railroad companies in respect to roads in process of construction. But in so far as the doctrine of the New York case may be considered at variance with the case of *Denver & S. P. R. R. Co. v. Driscoll, supra,* as to circumstances under which a person in charge of the company's business is to be regarded as a vice-principal, we cannot follow it. See, also, *Batterson v. Chicago & Grand Trunk R'y Co.,* 53 Mich. 125.

Some of the instructions, for example, those declaring it to be the duty of the defendant company to exercise reasonable care and prudence in selecting competent servants to discharge the duties assigned them, though stating the law correctly, may have been unnecessary under the issues and evidence. But they could not have been misleading in view of the fact that the evidence tended to show that the proximate cause of the injury was the negligence of

Banker in taking a train so heavily and improperly loaded over a defective road. The answer admits that plaintiff and his co-employees were engaged in the work of constructing defendant's railway, and "were performing their labor under the supervision and direction of one Henry Banker." The evidence also, as well as the pleadings, showed that Banker was the representative of the company in relation to plaintiff at the time of the accident, and not a fellow-servant of a common master. Hence, the instructions relating to *servants in different departments of the defendant's service*, whether stating correct legal propositions or otherwise, could not have been prejudicial to defendant.

It is unnecessary to consider the instructions further in detail. The charge of the court was full and explicit, stating the law correctly in substance as to the material matters in controversy at the trial. No proper requests to charge in behalf of the defendant were refused, except so far as they had been otherwise given in substance. The cause was fairly submitted to the jury upon the law applicable to the evidence.

As to the question of damages little need be said. In cases of this kind the assessment of damages must, within reasonable bounds, be confided to the judgment of the jury. This court has never been disposed to encourage extravagant verdicts; and juries in this state have, as a rule, been conservative in such matters.

The plaintiff testified that he "was thirty-nine years old at the time of the accident; was always a healthy man; was six feet one and one-half inches tall; strong physically." The testimony further shows that working upon the railroad was only a temporary employment of plaintiff; that his usual occupation had been merchandising or iron mining at the east, at which business he had been able to earn $100 or more per month.

The testimony further shows that *both of plaintiff's legs were so crushed as to render amputation necessary; one being*

cut off about four inches and the other about five inches below the knee; that he is not able to straighten out the stumps, and that he has no means of support except his labor. The treatment necessary to his recovery was long and painful. Not being able to straighten his legs at the knee joints, artificial limbs cannot be adjusted; so his only mode of personal locomotion is by dragging himself along upon his knees. The record before us does not disclose nor lead to the conclusion that the jury were influenced either by passion, prejudice or other unworthy motive in arriving at their verdict. Under the circumstances, we do not feel warranted in declaring the damages excessive. The judgment is accordingly affirmed.

*Affirmed.*