COLORADO MIDLAND RAILWAY COMPANY v. NAYLON.

1. RISKS ASSUMED BY RAILROAD EMPLOYEES IN WORK OF CONSTRUC-
   TION.—The servant of a railway company employed in the work of
   construction assumes greater risks from a defective track than one
   passing back and forth over the line after its full completion and
   equipment.  But he has a right to expect a degree of care and skill
   equal to that ordinarily exercised during the progress of railroad
   construction.
2. KIND OF NEGLIGENCE NOT CONTEMPLATED BY CONTRACT OF CON-
   STRUCTIVE EMPLOYEE.—*Held*, that the single spiking of three ties,
   coupled with an entire omission to spike the fourth upon a curve
   of five or six degrees, was, under the evidence, negligence not con-
   templated by the contract of a constructive employee.
3. MASTER LIABLE TO SERVANT FOR NEGLIGENCE OF VICE-PRINCIPAL.
   —The mere fact that the servant whose negligence produced the
   injury complained of is superior in rank to the servant injured does
   not alone fix the master's liability.  When, however, such servant
   can fairly be said to take the place of the master and represent him,
   so as to become in reality a vice-principal, and the negligence occurs
   in the discharge of his representative duties, the master's liability
   may attach.
4. WHEN AN EMPLOYEE BECOMES VICE-PRINCIPAL.—B., a general agent,
   was in charge of the track laying, a distinct department of the rail-
   road construction ; he had under him five different gangs of men,
   employed in different branches of the track-laying department,
   each gang having its particular foreman ; B. had authority to hire
   and discharge both the foremen and the workmen ; he controlled
   the trains, cars, tools, and other implements used in track laying ;
   he was subject to the superintending direction of N. when present,
   but during N.'s absence he had supreme control over his department;
   the injury complained of by plaintiff was caused by obedience to
   B.'s direction concerning the manner in which certain work should
   be done ; N. was absent at the time.  *Held*, that B. was a vice-
   principal and not a fellow servant.

*Appeal from District Court of Lake County.*

ON the 31st day of August, 1887, appellee received an in-
jury, to recover damages for which the present suit was
brought.  The appellant company was then constructing its
road bed between Colorado Springs and Leadville.  Appellee

was a common laborer in appellant's employ, being engaged in the immediate work of bedding the ties. While returning to his work from his dinner, the portion of the construction train upon which he was riding was derailed and his foot was cut off below the ankle.

The general superintendent of construction in charge of the work was one Nelson. The head boss or general foreman in charge of all the track laying gangs was one Banker. The grading had previously been done, and the track-laying gangs consisted of, *first*, the men engaged in leveling the grade and in bedding the ties; *second*, those whose duty it was to lay the iron rails upon the ties; *third*, the gang engaged in placing the straps at the joints and bolting the same; *fourth*, the spikers who spiked the rails to the ties. These gangs were followed by a fifth body of men who ballasted and surfaced the track. Each of these separate gangs had its immediate foreman or boss. The foreman of the spikers being a man named Wallace. These foremen as well as the employees under them were subject to the orders of Banker, who had power both to employ and discharge them.

At the time of the accident, Nelson, the general superintendent, was not present, but Banker, the general track laying foreman was. Nelson had given orders to fully and carefully spike all the rails, and to double spike them on all curves of three degrees or more. The company was in haste to reach Leadville and was pushing the work as rapidly as possible. On the morning of August 31st, 1887, Banker gave orders to Wallace to keep the spikers up with the gang engaged in laying the rails. Upon being informed by Wallace that it was impossible, as he had not a sufficiently large force, he was instructed by Banker to single spike the rails and omit every fourth tie. The work was thus done during the forenoon and included a five or six degree curve upon which the accident happened.

Mr. A. E. PATTISON and Mr. H. T. ROGERS, for appellant.

Mr. J. S. JONES, for appellee.

MR. JUSTICE HELM delivered the opinion of the court.

While the engineer in charge of the construction train attributes the accident resulting in appellee's injury to a peculiarity of the locomotive wheels, the strong preponderance of evidence sustains the view adopted by the court below.

We must assume, and in fact the case is argued by counsel for appellant on the assumption, that the accident was due to the defective spiking of the ties upon the curve where the cars were derailed. That the track was thus left in a peculiarly dangerous condition, especially considering the size and weight of the locomotive in use, the evidence abundantly attests.

Plaintiff had nothing whatever to do with the spiking. He did not even walk over the rails after they were spiked. He had once ridden over the curve, but witnesses testify that in so doing he could not have observed the defects. The dangerous condition of the road at the point in question was therefore a fact concerning which no presumption of knowledge on his part attaches.

Counsel for appellant rely upon two propositions: *First*, that plaintiff's injury was occasioned by one of the ordinary dangers incidental to his employment. *Second*, that if the injury resulted from negligence, such negligence was the negligence of a fellow servant, a risk also contemplated by his contract.

That appellee in passing to and from his work over newly constructed pieces of road assumed greater risks than would another servant whose duty took him back and forth over the same line of track after its full completion and equipment for passengers, cannot be questioned. But appellee's contract did not exonerate the company from liability for injuries suffered through a risk that, in the light of the circumstances, must be regarded as extraordinary and unusual.

He had an undoubted right to expect a degree of care and

skill equal to that ordinarily exercised during the progress of railroad construction. *Colo. Midland Ry Co. v. O'Brien,* 16 Colo. 219. The record shows very clearly that such care was not taken in the present instance, and that the accident resulted from its omission. The single spiking of three ties and entire failure to spike the fourth tie upon such a curve appears by the evidence to have been negligence which exposed appellee to an extraordinary and unusual hazard,—a hazard that was not contemplated in his employment. The testimony of appellant's own witnesses shows that this was the only curve of like magnitude during the building of the entire road where the rails were even temporarily left thus insecurely fastened. For months before and always afterwards the rails upon such curves were uniformly double spiked to the ties.

The second objection above stated, while perhaps a little more difficult to answer, is also in our judgment not well taken. It is urged that Nelson was the only man connected with the business who could be regarded as the vice-principal or general representative of the company; that Banker, so far as the company's liability is concerned, was merely a co-employee or fellow servant with appellee; and that since Nelson exercised due care, the accident resulting from the disobedience of his orders by Banker, no liability attached to the company. This argument is plausible, and is not entirely unsupported by judicial decisions.

The mere fact that the servant whose negligence produces the injury is superior in rank to the servant injured, does not alone fix the master's liability. The general powers vested in the superior servant and the character of the specific act in connection with which his negligence occurs are considerations rarely, if ever, omitted in pursuing the inquiry. The accepted general rule is that where the negligent agent or servant can fairly be said to take the place of the master and represent him so as to become in reality a vice-principal, and the negligence occurs in the discharge of his representative duties, the master's liability may attach. But

the difficulty arises in determining what powers and duties constitute a vice-principal in each particular case. Here is where the divergence among the more modern and better considered cases begins. It is asserted that one is a vice-principal " to whom the master deputes the power of appointment and dismissal." Shearman & Redfield on Neg. (3d ed.) 103. But while the power of appointment and dismissal is undoubtedly an attribute of the master, its possession alone is by other authorities declared not to be always decisive. No satisfactory definition of the phrase " common employment " or the phrase " fellow servant " used in this connection, can be laid down as an absolute guide in all cases. Beach on Contributory Neg., sec. 115.

It is, however, unnecessary now to further pursue this general discussion. For the question, in so far as it relates to the case at bar, is practically stare decisis in this state. No doubt exists but that Nelson, the superintendent of construction, was a vice-principal and general representative of the company. But it does not follow from this fact that Banker was not also a vice-principal within the meaning of the authorities.

Banker and appellee were in a certain sense acting under a common employment, and laboring in the same general department or branch of the enterprise. But Banker was a general agent (whether we use the term " boss " or " foreman " is of no significance) in charge of the track laying, a distinct department of the railroad construction; he had under him five different gangs of men, each gang being employed to perform a certain portion of the work and being subject to the immediate control of its particular foreman who was always present watching the men and directing their labor; Banker had authority to hire and discharge both the men belonging to the gangs and the foremen respectively commanding the same; he controlled the trains, cars, tools, and other implements used in track laying; he was subject to the superintending direction of Nelson when present, but during Nelson's absence, he seems to have had supreme con-

trol so far as his department was concerned; his word was law, and the men in the different gangs as well as their foremen were bound to obey him. His negligence occurred in directing the foremen how certain work should be done. The particular act in connection with which the negligence occurred was of a general supervising nature. And Nelson being absent, Banker for the time being, at least, so far as the department of track laying was concerned, occupied his place.

To say that under these circumstances the company is absolved from liability for the negligence of Banker would be practically to ignore the recognized distinction between the negligence of a vice-principal and a fellow servant proper. It would also operate to overrule former decisions of this court; decisions where the circumstances presented were similar to those before us and which in effect recognize the law substantially as above stated. *Colo. Midland Ry. Co. v. O'Brien, supra; D. S. P. & P. Ry. Co. v. Driscoll,* 12 Colo. 520; *Colo. Cent. R. R. Co. v. Ogden,* 3 Colo. 503.

The judgment of the court below is

*Affirmed.*