The Denver & Rio Grande Railroad Company v. Sipes.

1. Employer and Employé—Fellow Servant.

The duties which the law imposes upon the master with respect to the employé's safety are such as relate to the furnishing and keeping in repair reasonably safe machinery and appliances for carrying on his business, a reasonably safe place in which to render the service and the exercise of reasonable care in the selection of competent coworkmen,—such acts as pertain to the construction, preservation and management, as distinguished from the work of operation. The master having properly performed these duties, the risk that the machinery and appliances will be carefully operated by his coemployé is assumed by the servant.

2. Same.

A railroad company is not liable for an injury to an employé on one of

its trains caused by the negligence of a conductor on another train in leaving open a switch which it was his duty to see closed by a brakeman.

3. SAME.

As between master and servant, the former is liable for the acts of his vice principal, but not for those of the employé's fellow servant. The specific act in connection with which the negligence occurs is the criterion by which the liability of the master is fixed rather than the rank of the servant who performs the act.

4. SAME.

Under the circumstances of this case, the negligence of a conductor on a railway train resulting in injury to a fireman on another train is *held* to have been that of a fellow servant.

*Error to the District Court of Arapahoe County.*

THIS is an action brought by Hattie Sipes to recover damages for the death of her husband, George Sipes, who was killed on the night of May 7, 1890. His death was caused by the derailing of an engine upon which he was engaged in the line of his duty as fireman, while in service of the defendant company. The accident occurred near a place called " Fountain," where the company, in the operation of its road, had a sidetrack for the purpose of allowing its trains to pass. The engine upon which deceased was employed was pulling a passenger train going south. A few moments prior to the arrival of his train a freight train going north had reached this point, and had gone onto the sidetrack for the purpose of allowing the passenger train to pass. In order to enable it to do so the forward brakeman on the freight train had opened the switch at the south end of the sidetrack, and left it to be closed by the rear brakeman, who, being at the time asleep in the caboose, neglected to do so. The fireman of the freight train had covered the headlight on his engine to indicate to the coming passenger train that all was right. The red light, customarily kept in the caboose of the freight train, had been left several days previous at the company's shops to be repaired, and which, by the rules of the company, when displayed, signified danger, and was a signal for any approaching train to stop. The passenger engine passed the

freight train, ran into the open switch, and Mr. Sipes was killed. Verdict and judgment in favor of plaintiff for the sum of $5,000. To this judgment defendant prosecutes this writ of error. Rule 117 of the company provides:

"Conductors will be held responsible for the proper adjustment of the switches used by them and their trainmen, except where switch tenders are stationed."

*Inter alia*, the court instructed the jury as follows:

"III. If you find that under the rules of defendant that were in existence at that time, and by which its trains were operated, that it was the duty of the conductor of the freight train going north to see that the switch was closed at the sidetrack on which he placed his train, and that said conductor had exclusive charge and control of said freight train, and had command and control of the train hands on said train, and that he failed to see that said switch was closed, but negligently left it open, or negligently allowed it to be left open, and on account of such negligence of said conductor the accident occurred which resulted in the death of said George Sipes, then the negligence of the conductor would be the negligence of the defendant company, and the defendant cannot claim protection on the ground that said conductor was a coservant or fellow servant of said George Sipes."

And refused the following, asked by defendant:

"VII. The trainmen upon the freight train were fellow servants with the deceased, who was fireman on the other train, and for their negligence the defendant is not liable to this plaintiff."

Upon the giving and refusing of these instructions defendant assigns error. Error is also assigned to the giving of other instructions touching the liability of the company for failure to furnish customary signal lights, which, in our view of the case, it is unnecessary to consider upon this review.

Messrs. Wolcott & Vaile and Mr. H. F. May, for appellant.

Messrs. STUART & MURRAY, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

It is undisputed that the switch at the south end of the side-track was negligently left open by the employés of the company, and that the derailment of the engine upon which the deceased was employed was caused thereby. It may also be conceded that, under the rules of the company, the conductor in charge of the freight train was responsible for that neglect. The question, therefore, of the liability of the company for such neglect on his part, is squarely presented, and the correctness of the law given by the court below upon this branch of the case is the principal question presented for our determination; and that is, whether a railroad company is liable for the injury to an employé on one of its trains caused by the negligence of a conductor on another train in leaving a switch open that it was his duty to see closed. The solution of this question depends upon whether the default on his part consisted in a dereliction of duty imposed by law upon the company, or is one the performance of which it may delegate to another. If the former, the company is liable. If the latter, the rule that exempts the employer from liability for the negligence of a fellow servant applies. The personal duties that the law imposes upon the master are well defined and understood, and are such as relate to the furnishing and keeping in repair of reasonably safe machinery and appliances for carrying on his business; a reasonably safe place in which to render the service, and the exercise of reasonable care in the selection of competent coworkmen; in brief, such acts as pertain to construction, preservation and management, as distinguished from the work of operation. *The St. Louis I. M. & S. Ry. Co. v. Needham,* 63 Fed. Rep. 107.

The master having properly performed these duties, the risk that the machinery and appliances will be carefully operated by his coemployé is assumed by the servant. This rule is stated by Mr. Bishop, in his work on Noncontract Law, section 665, as follows:

" As between master and servant, the duty of planning a business, and all duties pertaining to the safety of the service, —such as the place to work, the implements and machinery, the plans and rules after which the work is to be conducted, the choosing of the fellow servants, and whatever else is within the same reason,—must be discharged either by the master in person, or by a vice principal for whose neglects and other wrongs therein he will be responsible as for his own. On the other side, the running of the business, with and in pursuance of the plans, rules, appliances, helps and helpers thus provided — in other words, the execution of the work—is of the assignable sort, rendering all persons engaged therein fellow servants, so that, if the master used due care in selecting his servants, he will not be responsible to one for an injury produced by the negligence or other default of another."

In this case there is no claim that the company failed in its duty to furnish a safe and sufficient switch, or to exercise the requisite care in selecting the conductor and brakeman whose duty it was to operate it; but, on the other hand, it appears that through their neglect to properly adjust it, the injury was caused.

It is insisted, however, that under the doctrine announced in the *Denver, S. P. & P. R. Co. v. Driscoll*, 12 Colo. 520, and *Colo. Mid. Ry. Co. v. Naylon*, 17 Colo. 501, the conductor occupied the position of vice principal, or *alter ego* of the company; and hence his negligence in this particular instance was the negligence of the company. We do not think that the rule therein announced supports this conclusion. In those cases the negligence that caused the injury consisted in the failure to properly perform a duty that the law imposed upon the company, and not in the negligent performance of an assignable duty, as in this case. In the case before us, the accident is not attributable to the negligence of the conductor in the discharge of a duty in his capacity as the company's representative, but to his failure to see that a brakeman properly attended to his duty. The rule of the

company making it his personal duty to see to the proper adjustment of the switches used in operating his train did not change the rule of law which governed the relations of the parties concerned, or take the handling of switches out of the category of assignable duties; and if, in the absence of such a rule, the company would not be liable for the negligence of a switch tender or a brakeman whose duty it is to perform such service, the adoption of such a precautionary measure, intended to better insure the performance of such duty by the brakeman, would not impose such a liability. *Miller v. S. Pac. Ry. Co.*, 20 Ore. 285.

The specific act in connection with which the negligence occurs is the criterion by which the liability of the company is fixed, rather than the rank of the servant who performs the act. As was said in *Colo. Mid. Ry. Co. v. Naylon, supra:*

" The mere fact that the servant whose negligence produces the injury is superior in rank to the servant injured, does not alone fix the master's liability. The general powers vested in the superior servant and the character of the specific act in connection with which this negligence occurs are considerations rarely, if ever, omitted in pursuing the inquiry. The accepted general rule is that where the negligent agent or servant can fairly be said to take the place of the master and represent him so as to become in reality a vice principal, and the negligence occurs in the discharge of his representative duties, the master's liability may attach."

As was also said in *Deep Mining Co. v. Fitzgerald*, 21 Colo. 533:

"The better rule, as we extract it from the best reasoned cases, is that for the acts of the vice principal, done within the scope of his employment, and such as properly devolve upon the master in his general duty to his servants, the master is liable ; while for all such acts as relate to the common employment, and are on a level with the acts of the fellow laborer, * * * the master is not responsible. In other words, the test of liability is the character of the act rather than the relative rank of the servants."

Our conclusion is that the negligence of the conductor in leaving the switch open was that of a fellow servant of the deceased, and for which the company is not liable. *The St. Louis I. M. & S. Ry. Co. v. Needham, supra; Naylor v. R. R. Co.*, 33 Fed. Rep. 801; *Roberts v. Ry. Co.*, 33 Minn. 218; *Harvey v. R. R. Co.*, 88 N. Y. 481; *Slattery v. R. R. Co.*, 23 Ind. 81; *Walker v. R. R. Co.*, 128 Mass. 10; *Miller v. Ry. Co., supra; Brown v. Cen. Pac. R. R. Co.*, 68 Cal. 171.

But it is said that if the court erred in its instructions upon this point, that such error is without prejudice, since the company is in any event liable for its failure to furnish a proper signal lamp. To this we cannot agree. The complaint charges two acts of negligence upon the company—the failure to furnish the cupola light, and the failure of the conductor to close the switch. Both issues were submitted, and the verdict of the jury being general, we cannot say upon which it was founded. Upon the testimony, the jury might have found that the absence of the signal light in no way contributed to the injury, but that it resulted solely from the negligence of the conductor in leaving the switch open.

" A general verdict upon distinct issues raised by several pleas cannot be sustained if there was error as to the admission of evidence, or in the charge of the court, as to any one of the issues." *State v. Baldwin et al.*, 112 U. S. 490.

For the reasons given the judgment of the court below must be reversed, and the cause remanded.

*Reversed.*