### No. 10,256.

### GROVE v. FREEMAN, ET AL., RECEIVERS OF THE DENVER & SALT LAKE RAILROAD CO.

Decided May 7, 1923. Rehearing denied June 4, 1923.

Action for damages resulting from personal injuries. Judgment of nonsuit.

*Reversed.*

1. NONSUIT—*Evidence.* A motion for nonsuit is equivalent to a demurrer to the evidence, and must be tested by that version thereof most favorable to plaintiff.

2. NEGLIGENCE—*Question for Jury.* In a personal injury case the evidence is reviewed and the question of whether, in the exercise of due diligence, defendant should have rescued plaintiff before the injury, held for the jury.

3. *Assumption of Risk.* Assumption of risk has been abolished in Colorado.

4. PRINCIPAL AND AGENT—*Negligence.* The negligence of a representative of the receivers of a corporation is their negligence.

5. PERSONAL INJURIES—*Negligence—Misfeasance.* Evidence in a personal injury case reviewed, and defendants' negligence held to be a misfeasance, not a nonfeasance.

6. NEGLIGENCE—*Promise to Perform.* In a personal injury case, upon consideration of the evidence, it is held that plaintiff's dependence upon a promise of defendants—failure to perform which, resulted in the injury—did not extend over an unreasonable period.

7. PLEADING—*Complaint.* Complaint in a personal injury case held to state a cause of action, and the evidence in support thereof ample to carry the case to the jury.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. GEORGE ALLAN SMITH, for plaintiff in error.

Mr. MILTON SMITH, Mr. CHARLES R. BROCK, Mr. W. H. FERGUSON, Mr. ELMER L. BROCK, Mr. JOHN P. AKOLT, for defendants in error.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THE parties hereto occupy the same relative position as in the trial court and for convenience are designated as there.

Plaintiff was injured on defendants' railway. As a result of that injury his left leg was amputated between the knee and ankle and he thereafter brought this action for damages. The cause came on for trial to a jury. At the close of plaintiff's evidence defendants moved for a nonsuit for failure of proof. The motion was sustained and to review the judgment thereupon entered this suit is prosecuted.

The trial court held: (a) That the complaint stated a cause of action, if at all, only under the doctrine of the "last clear chance"; (b) That there was no evidence that the train crew could have prevented the injury; (c) That plaintiff was guilty of contributory negligence; (d) That the facts did not bring the case within the doctrine of "promise to repair."

This motion was equivalent to a demurrer to the evidence and must be tested by that version thereof most favorable to plaintiff. *Nichols v. C., B. & Q. R. R. Co.,* 44 Colo. 501, 507, 98 Pac. 808. Such version may be briefly stated as follows: The plaintiff was injured about 11.30 a. m. February 9, 1921. He was then thirty-one years old and prior thereto was strong and able-bodied and his earning capacity was $135.00 per month. He had been employed as a section hand for five and a half months, the last month of which was in the capacity of section foreman. He was located at Spruce Station in the heart of the mountains, 9000 feet above sea level. He had six men under him and it was their duty to keep the road open on that section, extending some distance out of Spruce each way. The average temperature there during the winter months was below zero and the track was frequently so blocked by snow and debris as to be impassable for days at a time. Unless daily cleared the operation of the road would necessarily be abandoned for weeks at a time. As a condition of the employment defendants furnished the section house (practically the only thing constituting the station of Spruce) and necessary fuel. The only fuel available was coal brought in by the railroad.

The coal was furnished the men through the office of the general superintendent. The section foreman was under the immediate direction of an assistant roadmaster (in this case one, Nelligan). The next officer in authority was the roadmaster and the next above him the general superintendent. Nelligan had power to employ and discharge the foreman and it was his special duty to supply coal "from some source." About January 9, 1921 plaintiff called on Nelligan for coal and was told to stop a train. This he endeavored to do but the conductor declined unless by order of the dispatcher. Plaintiff then obtained a promise of relief from the dispatcher but no coal was delivered. He next called upon the chief dispatcher, with the same result. He again saw Nelligan who promised early relief, but meanwhile directed that he board a passing train and throw off a sufficient quantity of commercial coal to meet the emergency, assuring him that these trains passed Spruce so slowly as to make this method feasible and devoid of danger. Plaintiff protested because "it looks a little dangerous." Being again reassured by Nelligan, he and three of his men boarded a passing train, with the knowledge of the conductor, and thus secured a supply which lasted until about February 9. Seeing this supply practically exhausted plaintiff again took the matter up with Nelligan. The excuse of no company coal immediately available was renewed, the promise of early relief again given, and plaintiff was directed to proceed as before. To his protest that "it is a little dangerous" Nelligan replied, "That won't be no danger." On the day in question a train, composed of an engine, thirteen coal cars and a caboose came by. It was moving at approximately six miles per hour past Spruce. It was the duty of the train crew to keep a general look out as to conditions along the track and know if anyone boarded the train. Acting upon Nelligan's direction plaintiff, alone, boarded this train, having first given the fireman a sign indicating his intention to do so, threw off a temporary supply of coal, and attempted to alight. The snow was banked between

three and four feet deep along the track but cut back a very short distance therefrom by the snow plow. In some manner not entirely clear to plaintiff he fell under, or fell and slid under, the train. In doing this he caught some portion of the car with his left hand and was dragged a considerable distance, making frantic efforts to attract the attention of the crew and badly bruising and lacerating his free hand in doing so. In this effort he evidently at length succeeded because the train was stopped and plaintiff extricated. He had remained practically uninjured until the last three or four hundred feet of the train's motion when his leg began to drag under, and be caught by, the wheel. It was necessary to jack this wheel up to release him.

Admitting for the moment that this evidence discloses some negligence on plaintiff's part we think the question of whether the train crew should, in the exercise of due diligence, have been apprised of plaintiff's peril in time to rescue him before his injury was one for the jury.

"Assumption of risk" has been abolished in Colorado. Sec. 4171 C. L. 1921.

Nelligan was the representative of defendants and his negligence, if any, was theirs. *Colo. Mid. Ry. Co. v. O'Brien,* 16 Colo. 219, 227, 27 Pac. 701.

It is the contention of defendants' counsel that an action of this character lies only for a negligent misfeasance and that as the evidence shows nothing more than nonperformance of a contract to furnish coal plaintiff can not recover. The fallacy of the position lies in this, that defendants' negligence was a misfeasance not a non-feasance. Coal at this station was not only necessary to the comfort and convenience of plaintiff and his men, it was an absolute essential of their life and labor and indispensable to the conduct of defendants' business. Defendants assumed the obligation of furnishing it. Their duty was to make it safely available. That duty was negligently performed. Taking this coal from the place where it was furnished was the business of plaintiff under his con-

tract of employment. Instead of delivering the coal on a stationary train, or platform, thus furnishing plaintiff a safe place to work, defendants delivered it on a moving train and directed plaintiff to work there. This was for the convenience of defendants, not plaintiff. The danger to which plaintiff was thus subjected was not such as only the foolhardy would willingly encounter. It was met and passed once in safety by three of these men. Whether plaintiff's dependence upon defendants' promise extended over an unreasonable period must be determined in the light of existing conditions. Considering the isolation of the place of employment, the season of the year, the rigors of the climate, the fact that no company coal had been available since the making of the promise, the disastrous consequences of a cessation of labor, the apparent good faith of the promise and the difficulty of its prior fulfillment, we are of the opinion that the time was not unreasonable. *Hough v. Railway Co.,* 100 U. S. 213, 225, 25 L. Ed. 612.

It is unnecessary to dissect this complaint. In our opinion it states a good cause of action under the ordinary rules of tort as well as under the doctrine of "last clear chance" and the doctrine of "promise to repair" or "promise to remedy" and that under either the evidence was ample to carry the case to the jury.

The judgment is accordingly reversed and the cause remanded.

MR. CHIEF JUSTICE TELLER not participating.

MR. JUSTICE ALLEN sitting as Chief Justice.