[No. 6341.]

THE KENT MANUFACTURING COMPANY v. ZIMMERMAN.

1. Pleading—Amendment—In an action by servant against master, the complaint alleged an injury "by having his hand come in contact with the teeth in the mouth of said machine" (a duster used to clean shoddy), "while in motion." Plaintiff was allowed to file amendments by one of which he attributed his injury to the starting of the machinery after he had stopped it, and while he was engaged in cleaning it, and by the other of which he attempted to explain that the cause of the improper setting in motion of the machinery was a defect in the adjustment of the belt by which power was conveyed to it. Held that the amendments presented no different cause of action from that originally asserted.—(392-395)

2. Appeals—What Questions Considered—Questions not presented below will not be considered on appeal. Nor, where the cause must be remanded, will an alleged fault in pleading which may be cured by amendment; nor the absence of evidence which upon a second trial may be supplied.—(395)

3. Negligence—Proximate Cause—An alleged defect in the master's appliances, which, if it existed, in no way contributed to the injury complained of, is not actionable; and it is error to charge the jury that if the defect existed it was negligence.—(397)

4. Instructions — What Questions to be Submitted — In an action for negligence the court should submit to the jury only the particular negligence charged, as to which there is evidence to support the complaint.—(398)

5. ——Whole Issue to be Submitted—In an action for negligence where assumption of risk and contributory negligence are pleaded, and evidence given to sustain the defense, an instruction which excludes these defenses from the consideration of the jury, is error.—(398)

6. Master and Servant—Master's Duty as to Appliances—The master is under duty to exercise reasonable care, skill and prudence, to provide reasonably safe appliances for the use of the servant. Ordinarily this duty is measured by what is customary, so that if the master fails to provide for the protection of the servant a device which is usually employed in like case, and provides no other reasonably safe device, he may be declared negligent, the question being for the jury.—(399)

7. ——Servant's Assumption of Risk—The servant assumes the risks which are reasonably and naturally incident to the employment, and those arising from defects in the machinery which

are open and obvious, or which he would have ascertained by the exercise of ordinary diligence.—(400)

In absence of such obvious defects, the servant has the right to assume that the master has discharged his duty and has exercised reasonable care for his safety.—(401)

In determining whether the servant assumed the risk of injury from the particular defect complained of, the nature of his previous employments and their duties and responsibilities, his experience, his opportunities to learn by observation, the equipment employed to prevent the occurrence which he claims was the cause of his injury, and whether from his experience he should have observed the absence of the necessary equipment, are to be taken into consideration.—(402)

8.  **Contributory Negligence of Servant,** is negligence without which the injury would not have occurred. Where the servant voluntarily exposes himself to a risk which he has assumed, it is contributory negligence and precludes a recovery.—(400, 401)

9.  **Negligence—Questions for Jury**—The questions of negligence and contributory negligence are for the jury, except in those cases where the facts are undisputed, or the evidence is clear.—(403)

*Appeal from Denver District Court* — Hon. HUBERT L. SHATTUCK, Judge.

Mr. WILLIAM E. HUTTON, for appellant.

Mr. S. A. OSBORN, and Mr. CLYDE H. OSBORN, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellee, as plaintiff, brought suit against appellant, as defendant, to recover damages for personal injuries claimed to have been sustained through the negligence of defendant. The verdict and judgment was in favor of plaintiff, from which the defendant has appealed.

It is evident from the pleadings and testimony that issues of fact were submitted to the jury for determination which should not have been, and for this reason the judgment of the district court must be reversed and the cause remanded for a new trial. It

is also apparent from an inspection of the complaint that the facts upon which the plaintiff relied for a recovery are not clearly stated, and before another trial, should be so amended as to succinctly charge wherein the defendant was guilty of negligence upon which the plaintiff predicates his cause of action.

In further considering the case we shall limit our decision to those questions which will enable the parties on a retrial to have the case submitted to a jury upon the vital questions involved.

Plaintiff was employed by defendant in operating a duster machine, which was used to clean shoddy. The machine consisted of a cylinder containing rows of teeth arranged longitudinally. The cylinder was enclosed in a casing, with the exception of a portion at the top about fourteen inches square, through which the shoddy was fed into the cylinder. There were also two rows of teeth on the inside of the casing, so placed that the cylinder teeth passed between them when the cylinder was in motion. When in operation the cylinder revolved at the rate of about three hundred and sixty revolutions per minute. The power was conveyed to the machine by means of a belt connecting a pulley on the cylinder shaft with a drive pulley. There was also a loose pulley on the cylinder shaft which would revolve when the belt was shifted to it, independent of the shaft, so that when the belt was thus placed the cylinder would cease to revolve. The shoddy was forced through a pipe by a strong current of air into a reservoir called a balloon or cyclone, which was directly over the duster machine. From this reservoir the material dropped through a tube about eight inches in diameter, into a hopper, placed in the opening in the casing above referred to, which was considerably larger than the tube, from which it passed into the cylinder. At times the tube would become

clogged with the shoddy.   When this occurred it was necessary to remove the clog.  This was accomplished by the operator inserting his hand into the hopper, and into the end of the tube, and pulling out the material which caused the clog.   In so clearing out the stoppage plaintiff was injured by his hand coming in contact with the cylinder teeth.

Plaintiff claims that immediately preceding his attempt to remove the clog, which he was engaged in doing when injured, he had shifted the belt from the tight to the loose pulley, which caused the cylinder to stop, but that by some means unknown to him, the belt had moved back to the tight pulley, thus causing the cylinder to revolve.   He also claims that a stepladder had been furnished, which he used when removing a clog; that on the day of his injury he could not find it, because some one had carried it off, and that he then went up and stood on a casting connected with the machine, in order to elevate himself sufficiently to reach into the hopper, and the tube connected with the cyclone.

The failure of the defendant to provide an appliance which would prevent the belt from shifting from the loose to the tight pulley without the will of the operator, was charged as negligence on the part of the defendant.   Negligence, in other respects, was also charged.   The charge of negligence, as embraced in the original complaint, was as follows (paragraph 5):  "That the machine operated by plaintiff was not provided with a lever for changing the power belt from one of the said pulleys to the other thereof, and a guard thereon to prevent the said power belt from passing from one of said pulleys to the other without the will of the operator. Also, that the sides of the hopper at the mouth of said machine were not extended for a foot or more above the mouth of said machine to protect the work-

man from the teeth in the said cylinder therein while cleaning out same when clogged; and also in not providing a safe and secure platform upon which the operator could stand while cleaning out said machine, and that defendant company had knowledge of all of said defects and omissions aforesaid.''

The defenses interposed were a general denial, assumption of risk, and contributory negligence. Some time prior to the trial plaintiff amended his complaint by filing the following, designated as ''Paragraph 5½'': ''Plaintiff alleges upon information and belief, and upon such information and belief charges the fact to be, that the belt conveying the power from the counter-shaft in said factory to the said 'duster' was not properly adjusted so as to be reasonably safe, and that defendant knew of such defect, or by the exercise of reasonable diligence, should have discovered such defect.''

The defendant moved to strike this amendment upon the ground that it introduced a new and different cause of action from that stated in the complaint. The record recites that this motion was granted in part and denied in part, but is silent as to what part of the amendment was stricken. Later, plaintiff filed a substituted amendment, again designated as ''Paragraph 5½,'' which is as follows: ''Plaintiff alleges upon information and belief, and upon such information and belief charges the fact to be, that the belt conveying the power from the counter-shaft in said factory, to the said duster, was not properly adjusted: In this, that the said belt had only been in use a short time, to wit: some three weeks, and had stretched or become elongated during that time, and had a tendency to slip from one pulley to the other.''

Paragraph 7 of the original complaint is as follows: ''That on or about the 28th day of October,

1903, this plaintiff, while in the service of said defendant, and operating the said duster machine hereinbefore described, was seriously and permanently injured by having his hand come in contact with the teeth in the mouth of said machine, while in motion. * * * ''

During the progress of the trial plaintiff was permitted to amend his complaint by adding the following as paragraph 7½: "And plaintiff further alleges that said injury occurred and was caused by the starting to running of the machinery of the said duster, while plaintiff was engaged in cleaning out the hopper thereof after he had stopped the said machinery for the purpose of so cleaning the same, in accordance with his instructions and in discharge of his duties."

Error is assigned upon the action of the court in allowing this amendment, based upon the ground that thereby an entirely new cause of action was injected into the case. In support of this contention it is argued that plaintiff's intention, as expressed in his original complaint, was to charge negligence on the part of the defendant in not providing a means to stop the machine or safeguards to protect plaintiff while cleaning out the cyclone when the cylinder was in motion, rather than to charge negligence in starting a stationary cylinder. That is to say, according to the original complaint, the theory was that the plaintiff's hand came in contact with the machine while in motion; but according to the second theory, as exhibited by the amendment, plaintiff's hand was in the machine while it was not in motion, and the injury was caused by the machinery being suddenly started, and hence, it is urged, the amendment makes a complete change in the cause of action requiring entirely new and different evidence to support it, and the approximate cause of

the accident under one thory is entirely different from that under the other.

There is no merit in this claim. Plaintiff's injury was occasioned by his hand coming in contact with the cylinder while in motion. If the cylinder had not been in motion his hand would not have been injured, and the amendment complained of merely states how it happened—that it was in motion when his hand came in contact with it. The cause of action was in no sense changed. The amendment referred to the same injury which plaintiff alleged he had sustained as the result of the negligence of the defendant, which consisted in its failure to provide the safeguards specified, the absence of which, according to the theory of plaintiff, was the cause of his injury, and the amendment merely stated how and why the alleged negligence of the defendant resulted in plaintiff being injured.

The question of whether or not an amendment to a complaint introduces a new cause of action is often one of acknowledged difficulty, but as applied to the present case, the test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid, to meet the possible scope and varying phases of the testimony. If by an amendment in personal injury cases, the plaintiff adheres to the injury originally declared upon, an alteration simply of the manner by which the defendant caused such injury is not the introduction of a new cause of action. —1 Enc. Pl. & Pr. 564.

Practically the same objections are urged against the amendment embraced in paragraph 5½. In the authority above cited, it is laid down, at page 563: "In suits founded on negligence, allegations of facts tending to establish the same act of negligence may properly be added by amendment."

According to the claim of plaintiff, the negligence of the defendant consisted in not equipping the cylinder with a device which would prevent it from starting without the will of the operator, and his claim that the belt, by being elongated, had a tendency to slip from one pulley to the other was equivalent to a charge that in this condition its tendency to shift was increased, and that by this means the cylinder when at rest might be suddenly set in motion, when there was no device to prevent the belt, when placed upon the loose pulley, shifting to the one used to drive the cylinder. This referred to the same injury sustained by the plaintiff, and to the same act of negligence originally pleaded, that plaintiff charged was the cause of his injury, namely, failure to equip the machinery which he was employed to operate with a proper safety device.

It is also urged that the amendments should not have been permitted because affidavits showing cause therefor were not presented. So far as advised from the record that question was not raised below, and will not be considered here.

It is now urged by counsel for appellant that paragraph 5½ is insufficient to charge negligence because it is not alleged that defendant had notice of the elongated condition of the belt, or, by the exercise of reasonable diligence, should have discovered this defect. The paragraph as originally filed contained averments to this effect, and there may be merit in the claim of counsel for plaintiff, that defendant should not now be heard to complain of this omission, if material, for the reason that by his motion interposed to strike the amendment made by paragraph 5½, he succeeded in having stricken that which he now asserts is essential. But we need not determine either of these questions, for the reason that by an amendment the alleged defect can be

remedied, and the question of the necessity of an averment to the effect that defendant had notice of the defective condition of the belt being elongated eliminated. The complaint as originally filed averred that "the said injury was due solely and entirely to gross carelessness and negligence of said defendant in failing to provide the said duster machine with proper safeguards to protect this said plaintiff from injury, the safeguards so omitted from said machine being the ones detailed in paragraph 5 herein." This was not changed after the amendments were made, which raises the question of what acts of negligence the plaintiff relied upon to establish his cause of action, when we come to consider paragraphs 5½ and 7½ on this subject. Neither is it altogether clear from the brief of counsel for plaintiff, whether they regard the paragraphs added by way of amendment as charging negligence, or whether they merely enlarged the scope of the testimony bearing on the negligence originally charged. As these are questions which can be made clear before another trial by amendment, we pass them without further consideration, to next take up the claim of counsel for defendant that the court erred in instructing the jury.

By instruction No. 1 the court advised the jury to the effect that the complaint alleged that the belt transmitting the power to the cylinder became elongated and loose upon the pulleys which it was intended to operate, and that by reason thereof it slipped from the loose to the fast pulley upon the cylinder shaft, and so started the machinery in motion while plaintiff was engaged in cleaning out the feeding apparatus, commonly called the cyclone; that defendant was negligent in failing to provide as an attachment to the machine a device for shifting the belt from one pulley to the other; that the de-

fendant was negligent in failing; to provide as an attachment to the machine a guard for the purpose of holding the belt upon the pulley to which it had been adjusted; that defendant was negligent in not providing a platform upon which the operator could climb in order to more easily remove the obstructions from the cyclone; and that the construction of the hopper into which the material was discharged from the cyclone was faulty in its construction. The instruction then concludes: "You are instructed that if you believe the defendant to be guilty of negligence, as alleged in the complaint, you should assess against the defendant such damages as you believe, from the evidence, the plaintiff has sustained as a natural and proximate result of the negligence complained of, not exceeding in any event the sum of ten thousand dollars, the amount sued for."

This instruction was clearly erroneous. Waiving the question of whether or not the allegation in the complaint with respect to the elongated condition of the belt was negligence, it is apparent that questions were submitted to the jury touching the alleged negligence of the defendant which there was no evidence to establish. The absence of a device for shifting the belt from one pulley to the other was immaterial, for the reason that plaintiff was not injured in any attempt to shift the belt. The absence of a platform for the operator to stand upon when removing a clog was also immaterial, for the reason that there was no evidence tending to prove that the position which he took upon the casting of the machine contributed to his injury, or that, had he been standing upon a platform, which he says should have been provided, it would have been prevented. Negligence which is not the proximate cause of an injury is not actionable; and yet, under this instruction, the jury were advised that if, from the testi-

mony, they determined that the defendant had been negligent in any of the ways mentioned, which there was no testimony to establish was the cause of plaintiff's injury, they could still find in his favor, and assess damages accordingly.

It needs no argument or citation of authorities to demonstrate that only those acts of negligence charged in the complaint which there was testimony to establish were the cause of plaintiff's injury, should have been submitted to the jury.

The instruction was also objectionable for the reason that it took from the jury the questions of assumption of risk and contributory negligence pleaded as defenses, unless it could be said that by other instructions this objection was cured.

It is contended by counsel for defendant that the court should have directed a verdict for the defendant. In support of this claim it is argued that there was no evidence tending to establish that defendant was guilty of negligence which was the proximate cause of the injury to the plaintiff; that he was guilty of contributory negligence; and that under the doctrine of the assumption of risk he is precluded from a recovery. In discussing the question of evidence, we shall limit it to that bearing upon the averments relating to the absence of a device to prevent the belt shifting from the loose to the fast pulley, and the construction of the hopper. With respect to the latter there was evidence to the effect that the space between the spout leading into it and the cylinder teeth was only about eight inches. The purpose of the hopper appears to have been to prevent the shoddy from being carried or blown from its course in dropping from the spout to the cylinder. It is the duty of an employer to exercise reasonable care, skill and prudence in providing reasonably safe machinery and appliances for the use of his employees.—

*D. & R. G. R. Co. v. Sipes,* 23 Colo. 226; *Burlington & Colo. R. Co. v. Liehe,* 17 Colo. 280; *Orman v. Mannix, id.* 564.

And if, through his failure to perform his duty in this respect, an employee is injured without fault on his part, the employer is liable.—*Deane v. Roaring Fork E. L. & P. Co.,* 5 Col. App. 521.

In support of the claim that there was no evidence tending to establish negligence on the part of the defendant, it is urged that it is not shown that the failure of defendant to provide a guard to prevent the shifting of the belt from one pulley to the other was a negligent omission. We cannot sustain this claim. There was evidence tending to prove that a belt used alternately on a tight and loose pulley for the purpose of stopping machinery propelled by the fast pulley, is liable to shift from one to the other. There was also evidence to the effect that in such case a device is employed which will prevent such an occurrence, and that this end is attained by using a shifting device which serves the double purpose of shifting the belt when desired, and holding it in place when shifted. Ordinarily an employer has exercised due care in providing against injury to his employees through machinery which they use when he has equipped it with such safety devices as are usually employed by others in like circumstances. The converse of this rule is also the general one. Hence, it follows in the circumstances of this case, that if it is usual to guard against the contingency of a belt shifting from a loose to a tight pulley by a device usually employed to prevent such an occurrence, taking into consideration that there was evidence that the space between the mouth of the spout and the cylinder teeth was but eight inches, and the danger to which plaintiff would be exposed by the cylinder starting suddenly when he was cleaning out a clog,

the failure of the defendant to adopt such device would be negligence, unless it should appear that defendant had provided some other reasonably safe means to prevent the belt shifting. This was a question for the jury to have determined under appropriate instructions.

In the circumstances of this case, the questions of contributory negligence and assumption of risk are so nearly akin and intimately connected, that they will be considered together.

If a plaintiff, in an action for personal injuries, claimed to have been caused by the negligence of the defendant, is guilty of what the law terms contributory negligence, he cannot recover. Contributory negligence is such negligence on the part of a plaintiff but for which he would not have been injured. As applied to this case, it may be said that an employee accepts service subject to all the risks naturally and reasonably incident to the employment in which he engages, and those arising from defects or imperfections in the machinery which he is employed to operate, that are open and obvious, or which he could have ascertained by the exercise of ordinary diligence—*Denver Tramway Co. v. Nesbitt,* 22 Colo. 408—and so it follows that where an employee suffers an injury through defects in machinery about which he is engaged, of which he knew, or should have known, or had means of knowledge equal to that of his employer, he cannot recover.—*Wells v. Coe,* 9 Colo. 159. In other words, the employee assumes all the risks and perils usually incident to the service in which he engages, and included in such risks and perils are those which it is a part of his duty to ascertain by observation.—*Coyle v. Griffing Iron Co.,* 44 Atl. (N. J.) 665. The distance between the mouth of the spout and the cylinder must have been known to the plaintiff. It was so obvious that

it could not have escaped his attention. The absence of a device to prevent the shifting of the belt from one pulley to the other without the will of the operator, was apparent; but should plaintiff be held, as a matter of law, to have appreciated its absence, and to a realization of the danger to which he was exposed because the machinery was not equipped with such a device? In the absence of such obvious defects in machinery an employee is engaged to operate, which it can be said he must have known, or by the exercise of reasonable diligence could have ascertained, he has a right to presume that his employer has discharged the duties which the law imposes to guard his employees from danger, and that he shall not be carelessly or needlessly exposed to risks not necessarily resulting from his occupation, and which might have been prevented by the exercise of ordinary care and precaution on the part of his employer.—*Gibson v. Pacific R. Co.*, 46 Mo. 163. The machine which plaintiff was employed to operate was a comparatively new invention, and had been in use but a short time. Plaintiff had been engaged in operating it but about three weeks. He had stopped and cleaned it out about eight or ten times previous to his injury, each time shifting the belt from the tight to the loose pulley. The belt had never shifted from one pulley to the other except as he had caused it to do so.

According to the testimony on the part of the defendant, it was admittedly dangerous to clear out a clog when the machine was in motion; and there is testimony from which it might be inferred that plaintiff had been instructed not to attempt to clear a clog except when the cylinder was at rest. The only means of stopping the cylinder with the other machinery in motion was by shifting the belt. The plaintiff testifies he did stop it in this way, that he had been instructed to do so, and was clearing

(26)

a clog when the cylinder started to revolve. This could only have been caused by the belt shifting to the tight pulley. He was an ordinary laborer, and not a machinist. It was no part of his duty to keep the machine in repair. His duties were limited to operating it. In law, the operator of a machine only assumes such dangers and risks in operating it as ordinarily prudent persons of his intelligence, experience and vocation should appreciate, or by the exercise of ordinary care, should discern.—*Colo. Midland Ry. Co. v. O'Bryan,* 16 Colo. 219.

Plaintiff had been employed in the establishment of the defendant for about four years previous to his injury in feeding a shoddy machine, not a duster, such as he was operating when injured. In determining the question of his assumption of risk with respect to the absence of a device to prevent the belt shifting from one pulley to the other, the nature of his previous employment, duties and responsibilities, his experience with machinery, his opportunities to learn by observation and experience, the equipment employed to prevent the occurrence which he claims was the cause of his injury, his knowledge with respect to such matters—in short, whether from his experience he should have known that a device to prevent the shifting of the belt was absent, and for this reason was exposed to injury when, after shifting the belt to the loose pulley, he was engaged in cleaning out a clog, should be taken into consideration.—*Wells v. Coe, supra.*

The questions under consideration are then resolved to this: Should plaintiff be charged with notice and knowledge of the dangers to which he was exposed when cleaning a clog by reason of the absence of an appliance to prevent the belt shifting from the loose to the tight pulley? If he should, then he assumed the risk incident to the absence of

such a device, and exposing his hand to injury by placing it in a position where it would come in contact with the cylinder when suddenly put in motion would be such contributory negligence as to preclude a recovery. On the other hand, if it should be determined that he did not assume the risk resulting from the absence of an appliance to prevent the shifting of the belt in the manner indicated, he was not guilty of contributory negligence. In the circumstances of this case, so far as advised from the record before us, the question of whether plaintiff assumed the risk of injury because no appliance was provided to prevent the shifting of the belt was one of fact for the jury.

In concluding the discussion on the subjects of the alleged negligence of the defendant and the claim that plaintiff was guilty of contributory negligence, it is proper to add that, subject to the rule announced in *Lord v. Pueblo S. & R. Co.*, 12 Colo. 390, and many other cases determined by this court, the questions of negligence as well as contributory negligence are generally within the province of the jury, which should not be invaded by the courts, except in clear cases.—*Colo. Midland Ry. Co. v. O'Bryan, supra.*

To briefly state what we regard as the vital questions in the case, as disclosed by the record before us, they are:

(1) Was the defendant guilty of negligence in failing to equip the duster with an appliance which would prevent the shifting of the belt from the loose to the tight pulley? If it was not, that is the end of the case.

(2) If, however, it was guilty of negligence in the respect mentioned, plaintiff should recover, unless, by reason of the assumption of risk or contributory negligence on his part, he is precluded from a recovery.

Plaintiff testified that the physician who treated

his injury rendered him a bill for $538.00. It appears that this bill is unpaid, and counsel for defendant contends that it should not have been considered by the jury except upon proof that it was reasonable in amount. This question can readily be eliminated by the introduction of testimony at a retrial, and we, therefore, regard it as unnecessary to pass upon it at this time.

It is also urged on behalf of the defendant that the verdict is excessive, for the reason that there was no showing that plaintiff's earning capacity was impaired by the injury he sustained, or what his earning capacity was; that there was no testimony tending to prove the length of time he was disabled from performing work, or confined to the house; in short, no evidence tending to prove what damages he sustained as the result of his injury. We do not deem it necessary to examine the testimony for the purpose of ascertaining what it may disclose on these subjects. On a retrial the evidence ought to be such as to eliminate these questions.

Many other errors are assigned which we do not deem it either advisable or necessary to pass upon, but by declining to do so, must not be understood as intimating that they have no merit. Now that the case has been fully argued in the way of briefs by respective counsel and their contentions fully disclosed, the case ought to be retried in such a way as to avoid raising the same questions a second time.

The judgment of the district court is reversed and the cause remanded for a new trial. Plaintiff should be permitted to amend his complaint as advised, and defendant should be accorded the privilege of amending its pleadings, if request therefor is made. *Reversed and remanded.*

Chief Justice Steele and Mr. Justice Bailey concur.