[No. 7829.]

COLORADO CAPITAL COAL MINING COMPANY v. CHATFIELD.

1. NEGLIGENCE—*Not Contributing to the Injury*, is not actionable, e. g. the failure of the proprietor of a coal mine to provide the metal tube prescribed by Rev. Stat. Sec. 640, where this omission had nothing to do with the injury complained of. (165)

2. INSTRUCTIONS—*As to Collateral Matter not in Issue*, tending to mislead and confuse the jury, disapproved. (165)

*Error to Boulder District Court.*—Hon. HARRY P. GAMBLE, Judge.

Mr. WILLIAM E. HUTTON, for plaintiff in error.

Neil Chatfield while employed in a mine of the Colorado Capitol Coal Mining Company as a cager, was injured, from the effects of which he died. His wife brought suit against the company to recover damages. Judgment was rendered in her favor for the sum of five thousand dollars, to review which the company has brought the case here on error. The complaint contained two counts. The first was based upon alleged negligence of the company, and the second upon the alleged negligence of its employes, who were fellow servants of the deceased.

The evidence discloses that a shaft about two hun-

dred feet deep connected the underground workings with the surface. The shaft had two compartments, in each of which a cage was operated by means of a cable. The cages were so arranged that when one was at the tipple of the mine, the other would be at the bottom of the shaft, and when one ascended the other descended. Coal was removed from the mine in loaded cars, hauled from the workings, and placed upon the cage. The deceased, at the time of his injury, and for some three months prior, had been employed as a cager. His chief duty was to place loaded cars upon the cage, to be hoisted through the shaft, and receive the empty cars returned by the cage and distribute them to the drivers. He usually worked south of the shaft, and the other cager, Boyd, north of the shaft. Occasionally he would go to the north side to assist Boyd in pushing the empty cars off the diamond or track, there being a slight grade on that side. Shortly before his injury he had helped Boyd with an empty car, and had started to go back to the south side by way of the shaft, and through the cage on his side. Before he got off that cage it was raised by the engineer and Chatfield was caught between it and the timbers of the roof of the entry, and received the injuries which caused his death.

Section 644 Revised Statutes 1908, provides, "* * * and there shall be cut, in the side of every hoisting shaft, at the bottom thereof, a traveling-way, sufficiently high and wide to enable persons to pass the shaft, in going from one side of the mine to the other, without passing over or under the cage or hoisting apparatus." The defendant company had complied with this statute by constructing a man-way on one side of the shaft. It appears that this passage was somewhat sloppy, that water was trickling down, and would fall on a person passing through, but a board had been placed so that

an employe could walk through without getting his feet wet. The compay had posted rules, one of which was as follows: "No cage will be hoisted without knowledge of men at bottom, but men must not cross over cage when on bottom, for fear it may be moved for some cause not known to them." The signal bells were so arranged that the cager would signal the weigh boss at the top, who would then signal the engineer to hoist. The engineer could also hear the bell from the bottom, but would not hoist until signaled by the weigh boss. It appears that the engineer did not hear any signal from the bottom to hoist the cage which injured Chatfield, but started to hoist on a signal from the weigh boss. The latter testified that he thought he heard a bell from the bottom when he signaled the engineer, but it is probable that he was mistaken about receiving such signal.

There was also evidence that on the day of the injury the signal bells were in working order, although about one week prior to that they had not been. Section 640 of the statutes, *supra,* provides, "In all cases where the human voice cannot be distinctly heard the owner or agent shall provide and maintain a metal tube from the top to the bottom of the slope or shaft, or a telephone connection suitably adapted to the free passage of sound, through which conversation may be held between persons at the bottom and at the top of the shaft or slope; also the ordinary means of signaling to and from the top and bottom of the shaft or slope   *   *   *" Over the objection of defendant the plaintiff was permitted to show that the mine was not equipped with either of these appliances.

The court instructed the jury to the effect that if they found from the evidence that the defendant, in the exercise of ordinary care for the protection of its cagers at the bottom of the shaft, should have provided a speak-

ing tube or a telephone from the top to the bottom of the shaft, through which conversation could be held, or some method of return signal, by which inquiry could be made of the cagers in the bottom of the shaft whether they were ready to have the cage hoisted, or by which, when the engineer was in doubt whether a signal had been given or not, inquiry could have been made from the top, and that the defendant failed to furnish these appliances, and did not exercise ordinary care in that respect; then in that event, they would be justified in finding that defendant was guilty of negligence. To this instruction the defendant objected and excepted, and requested the court to instruct the jury that the plaintiff was not entitled to recover any damages on account of the fact that the defendant did not provide or maintain a metal or any tube, from the top to the bottom of the shaft through which conversation could be held, which was refused.

Numerous errors are assigned upon other matters which we shall not mention or pass upon in view of the fact that plaintiff has not seen fit to give the court any aid by filing a brief, and we shall confine our decision to the propositions urged by defendant, which are: that the court erred in permitting plaintiff to show that the mine was not equipped with a speaking tube or telephone; in giving the instructions above noted regarding these appliances, and in refusing to instruct the jury that damages could not be predicated on this failure.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The most that can be claimed for the testimony on the part of plaintiff is that it was for the jury to determine whether negligence on the part of the company or its employees, or the negligence of the deceased in passing through the shaft and over the cage instead of the man-way, was the proximate cause of his injury.

It is clear that the failure of the defendant to equip its mine with a speaking tube or telephone connection in no manner contributed to the injury of deceased. It does not appear that either of these appliances were necessary or were ordinarily used for signaling the engineer to hoist the cage. Bells were provided for this purpose and in working order. Failure on the part of the company to comply with the statute relating to speaking tubes and telephone connections, was negligence, but not actionable, when it appears that it did not cause or contribute to the injury of deceased.—*Kent Mfg. Co. v. Zimmerman*, 48 Colo. 388, 10 Pac. 187; *Elkton Cons. G. M. & N. Co. v. Sullivan*, 41 Colo. 241, 92 Pac. 679.

In determining the vital question in the case the testimony relating to such negligence was in no sense pertinent, and its admission and the instruction of the court upon the subject presented a collateral matter which tended to confuse and mislead the jury, instead of informing them upon the issue they were to consider and determine.—*Denver Tramway Co. v. Cowan*, 51 Colo. 64.

The judgment of the District Court is reversed and the cause remanded for a new trial.

*Judgment reversed.*

Mr. CHIEF JUSTICE MUSSER and Mr. JUSTICE BAILEY concur.