[No. 5575.]
[No. 3253 C. A.]

BURNSIDE v. PETERSON.

1. **Master and Servant—Injuries to Servant—Safe Place in Which to Work.**

It is the duty of the master to exercise ordinary care in seeing that the servant is provided with a reasonably safe place in which to work.—P. 386.

2. **Same—Actions for Injuries—Questions for Jury.**

In an action for injury to a servant who stepped on a trapdoor which "tipped up on one end" and precipitated her into the cellar below, whether the master was negligent in not having provided the trapdoor with hinges or other fastenings, is for the jury.—P. 386.

3. **Master and Servant—Assumption of Risk—Duty of Servant to Make Inspection.**

If an inspection of the underside of a trapdoor, through which a servant fell, or of the cleats on which it rested, was necessary to apprise her of the defect in the door or its supports, then such defect was not such a one as to charge her with notice thereof so as to bring her within the rule of assumption of risk.—P. 387.

4. **Practice in Civil Actions—Instructions—Technical Objections.**

In an action for injury to a servant, the jury were instructed to find for the servant if the master was negligent in permitting the trapdoor through which the servant fell to become loose. Held, that an objection thereto, on the ground that there was no evidence that the master permitted the trapdoor to become loose, is too technical and without merit, where, reading the instructions together, it is manifest that the word "become" was used in the sense of "be."—P. 389.

5. **Practice in Civil Actions—Instructions—Duty to Tender.**

Where a party desires a more specific instruction than that given, he should tender it.—P. 390.

*Appeal from the District Court of Teller County.*

*Hon. Robert E. Lewis, Judge.*

Action by Mary Peterson against W. O. Burnside. From a judgment for plaintiff, defendant appeals. *Affirmed.*

Mr. CHAS. A. PRENTICE and Mr. CHAS. C. BUT-
LER, for appellant.

Mr. EUGENE ENGLEY, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of
the court:

This appeal is from a judgment in favor of ap-
pellee, in an action for personal injuries sustained by
appellee while in the employ of appellant as a domes-
tic servant.

The house was of several stories. Beneath the
kitchen was a basement, and under that, a cellar.
The floor of the basement was of 2-inch plank, 8 or
10 inches wide, unmatched. In the floor of the base-
ment was an opening about 2 feet square, which
gave access to the cellar; to cover this opening, a
trapdoor was provided, made of the same material
as the floor, the planks composing the trapdoor being
fastened together by 2-inch strips nailed to the bot-
tom thereof; cleats about 4 inches wide, nailed to the
joists below the floor on either side of the opening,
of the same material as the floor and trapdoor, af-
forded support for the trapdoor. The trapdoor
fitted into the opening in the basement floor, and was
not attached to the floor or joists by hinges, or other-
wise. The trapdoor fitted in the opening somewhat
loosely, resting upon the cleat on one side, about one
and one-fourth inches, on the other side about an
inch, and at one corner about one-half inch, thus
affording some play for the door within the opening.

The basement was of two rooms, the front room
occupied by appellee, the rear room used as a laun-
dry and furnace room. The exact location of the
trapdoor in the basement floor is not apparent from
the evidence; but it appears that, in the discharge of
her duties, appellee frequently passed over the trap-
door.

Appellee was not informed of the existence of the trapdoor, and knew nothing about it until about two weeks after she entered the service, when a porter in the employ of appellant came up through the trapdoor from the cellar with kindling, there being an entrance to the cellar from the outside. The evidence shows that, previous to the accident, the appellee saw the trapdoor opened two or three times only, when some one came through it from the cellar.

Appellee knew that the trapdoor was without hinges or other visible fastenings to the upper side of the floor, never had any occasion to use, and never used, it, never opened it, and never made any inspection of it to determine whether or not it was in any manner fastened to the under side of the floor. There was ample light in the room where the trapdoor was located.

About half past eight o'clock of the evening of June 1, 1903, appellee, in crossing the floor of the basement in the discharge of her duties, stepped upon the trapdoor, which "tipped up on one end" and precipitated her into the cellar below, resulting in injuries which are the basis of her suit.

The complaint alleged that the injuries received caused appendicitis. The court instructed the jury to disregard all damages claimed on this account, as the testimony failed to show that the fall was the proximate cause of appendicitis.

It is contended that the judgment should be reversed upon the grounds:

1. That no negligence upon the part of appellant was shown.

A witness called by appellee, who examined the premises a few days before the trial, testified as to the size, shape, material and construction of the trapdoor, the manner in which it rested upon the cleats, and then, quoting from the abstract:

"With reference to this trapdoor, I don't think it was in a safe and secure condition as to construction without fastenings, hinges or bolts, or anything of that kind; to make this trapdoor secure and safe, it would be necessary to have hinges."

And upon cross-examination:

"After measuring this trapdoor the other night, I put it in position, and then I had my weight on various parts of it; could not in any way throw it out of position by my weight; if the trapdoor was placed in position it would be as safe then as any other trapdoor, so when I answered that the trap was not safe, I simply meant that it would not be as safe as a trapdoor with hinges."

"Q.—A trapdoor with hinges, if it were put to the edge of the cavity? A.—Yes. All I meant was, that if those were carelessly placed, a person might not notice that; that was all I meant; but when that trapdoor was placed in position, no matter which way it was placed, it might be turned end for end, it was absolutely safe."

And, on re-direct examination:

"When I answered that this trapdoor was safe as any other trapdoor, I did not mean to state to the jury or to have the jury infer, from that, that the trapdoor was safely and securely constructed to prevent accidents."

The foregoing is substantially all the testimony upon this point, and it was undisputed.

Counsel for appellant contended that, upon the statement of this witness, upon cross-examination, to the effect that "when the door was placed in position, it was absolutely safe," no negligence upon the part of appellant has been proven; and the absence of hinges or other fastenings cannot be held to be negligence, upon the theory that the master is under no obligation to furnish any particular kind of ap-

pliance, or to adopt the latest improvements, citing *Denver Tramway Co. v. Nesbit,* 22 Colo. 408, where this court, after stating the principle relied on by counsel, said:

"He (the master) is only bound to see that that which he does employ is reasonably safe and suitable for the purpose for which it is designed."

The witness had testified that the trapdoor, without fastenings, hinges or bolts, was not safe and secure, and that such appliances were necessary to make it safe and secure. His statement upon cross-examination, to the effect that the trapdoor was absolutely safe, in view of the explanation of this statement upon re-direct examination, simply meant that the door was safe when in the position in which he had placed it when he tested it; or, in other words, that the door placed in proper position, resting fairly and squarely upon the cleats, so far as material and construction was concerned, was safe, but without hinges or fastenings of some kind it was not safely and securely constructed to prevent accidents.

In view of the entire testimony of this witness, we think the above quotation from *Tramway Co. v. Nesbit* applies to this case rather than the proposition relied upon by counsel. It is the duty of the master to exercise ordinary care in seeing that the servant is provided with a reasonably safe place in which to work.—*Grant v. Varney,* 21 Colo. 329; *Colo. Milling & Elevator Co. v. Mitchell,* 26 Colo. 284; *McKean v. C. F. & I. Co.,* 18 Colo. App. 285; *Roche v. D. & R. G. R. R. Co.,* 19 Colo. App. 208.

The question of the negligence of appellant, under the testimony in this case, was peculiarly for the jury, who were the exclusive judges of the weight to be given the testimony and the credibility of witnesses; and they, having found that defendant was guilty of negligence in not having provided the trap-

door with hinges or fastenings, the verdict will not be disturbed, unless it should appear that they were incorrectly instructed as to the law.

2. It is said that the only risk that appellee contends she was subjected to was that arising from the absence of hinges on the trapdoor, and that she assumed this risk.

If appellee's right to recover depended upon the absence of hinges alone, it might be successfully contended, under the facts disclosed by the evidence, that this risk was assumed by her.

The rule applicable to assumption of risk is thus stated:

"An employee assumes all the risks naturally and reasonably incident to the service in which he engages, and those arising from defects or imperfections in the thing about which he is employed that are open and obvious, or that would have been known to him had he exercised ordinary diligence."—*Monarch M. & D. Co. v. De Voe*, 36 Colo. 270, 273, and cases cited.

The testimony is to the effect that, in the absence of hinges, fastenings or bolts, the trapdoor was unsafe and insecure. The absence of hinges or other fastenings on the top of the door was open and obvious; not so, however, with reference to fastenings which might have been attached to the under side of the trapdoor, which would have made the same safe and secure, or to the cleats upon which the door rested. The testimony showed that appellee had no occasion to use, and never did use, the trapdoor; that she never saw the under side of it or the cleats upon which it rested. There is no rule which imposes upon a servant the duty of making an inspection or examination for the purpose of discovering defects which are not open and obvious; the exercise of the ordinary diligence imposed upon an em-

ployee does not extend to this length. If an inspection of the under side of the trapdoor, or of the cleats upon which it rested, was necessary to apprise appellee of the defect in the door, its fastenings or its supports, which defect caused the accident, it is manifest that the defect was not obvious, and under the testimony was unknown to appellee, and not of such a character as to charge appellee with notice or knowledge thereof, so as to bring her within the rule of assumption of risk.

"As a general rule, the servant is under no obligation either to inspect that part of the plant by which his safety may be affected, or to inquire into the details of the system adopted for the conduct of the master's business, for the purpose of discovering concealed dangers which would not be disclosed by superficial observation."—1 Labatt Master & Servant 1137.

*Huddleston v. Lowell Machine Shop,* 106 Mass. 282, was an action brought by a servant against his master to recover for personal injuries received by him in breaking and falling through a floor in his master's shop, over which it was his duty to pass. It appeared that he knew the floor was decayed, and that there were holes in it, but it did not appear that he could have ascertained that the place where he broke through was dangerous, without examining parts of the floor not open to his inspection. The court said:

"In this case, the evidence shows that the plaintiff had some knowledge of the condition of the floor. If it was sufficient to put him on his guard at the time, he cannot recover. But, from the nature and condition of the building, and the nature of the defect, the court cannot say that the plaintiff could, without having examined the parts of the floor that were not ex-

posed to his inspection, be aware that there was danger at the place where he broke through. If it would require an inspection of the under side of the floor, or of the parts of the building under it, to make him aware of the danger, then the injury might have happened without his fault. The evidence on this point should be submitted to a jury, to determine, under proper instructions, whether he used due care at the time of the accident.''

There is nothing in the evidence tending to show that appellee was guilty of negligence at the time the accident occurred.

3. Two of the instructions given by the court are objected to because they contain a statement to the effect that if the jury believed, from the evidence, that the defendant was negligent in permitting the trapdoor to become loose, or to be loose, they should find for the plaintiff, upon the ground that there was no evidence tending to show that defendant permitted the trapdoor to become loose.

Reading the instructions together, it is manifest that the word ''become'' was used in the sense of ''be.'' The instructions upon this point, taken as a whole, could not have misled the jury.

The duty of guarding against defects or want of repair is a continuing one; the master is chargeable with knowledge of all defects which might have been discovered upon reasonable inspection.—Dresser's Employers' Liability, p. 195.

The objection urged to these instructions is entirely too technical, and is without merit.

4. The court instructed the jury that, in assessing damages, they should take into consideration, among other things, ''money expended for necessary medical and surgical attention, and for nursing and drugs.''

Appellee testified that she had expended, for doctors' bills, hospital bill and drug-store bills, $262.

It is contended that, inasmuch as the court withdrew from the consideration of the jury, as an element of damages, the fact that appellee was stricken with appendicitis, and as there was no evidence to show what her expenses were on account of the operation for appendicitis and sickness occasioned thereby, separate from her expenses on account of the direct injuries resulting from the fall, the jury, by this instruction, were permitted to enter the realm of conjecture, and guess at the amount appellee expended on account of the injuries resulting from the fall. The instruction complained of expressly excluded from the consideration of the jury expenditures for medical attention, nursing and drugs, on account of appendicitis, and is not open to the objection urged against it.

Further, if appellant desired a more specific instruction upon this phase of the case, he should have tendered one. This he did not do, and now is in no position to complain of the instruction given, as it fairly instructed the jury as to the measure of damages to be applied to the evidence adduced.

The instructions as a whole fully, fairly and clearly presented the law of the case to the jury, and are commendable for their brevity. There being no error in the record, the judgment will be affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HELM concur.