[No. 3457.]

## COLORADO SPRINGS GAZETTE CO. v. SIMMONS.

1. PLEADINGS—*Construed.*—In an action by servant against master the complaint alleged that a certain machine maintained in the master's establishment for trimming type-metal, operated by electricity, was in defective condition; that the insulation thereof, and of the wires attached to it, was so defective as to permit the electrical current to be transmitted to any one coming in contact with any part of the machine; but it was not alleged that this condition was due to negligence on the part of the defendant. In another paragraph it was alleged that it was the duty of the plaintiff, on occasions specified, to remove the pieces of metal which accumulated about the machine; that on the occasion of the injury defendant had negligently left the current turned upon the machine, and thus increased the danger, to any one coming near it; that while the machine was defective and out of order, and the current passing through it, plaintiff, while engaged in his duty aforesaid, came in contact with the machine, and sustained the injury complained of. Held that the complaint grounded the action not upon the defective

condition of the machine, but upon negligence in failing to turn off the current.

*Elkton Co. v. Sullivan*, 41 Colo., 241; *Denver Co. v. Walters*, 39 Colo., 301, distinguished.

2. MASTER AND SERVANT—*Master's Duty to Warn and Instruct Servant of Danger.*—If the service is attended by unusual risks, not obvious, and presumptively not within the knowledge of the servant, the master having knowledge thereof, is under duty to warn servant. If by reasonable care the master would have known of such danger, he is chargeable with knowledge thereof.

A man of limited education was employed as janitor in the establishment of a company publishing a newspaper. It was part of his duty to clear up, daily, metal scraps accumulated about a cutting machine which was operated by electricity. He had no acquaintance with machinery operated by electric power. No warning was given him of any danger to be apprehended from the current. Defendant's employees who operated the machine were entirely familiar with these dangers, and it was their custom whenever required to go under the machine, to turn off the current. On the occasion in question the machine was not in motion and nothing suggested any danger; but the current had not been turned off, and plaintiff in passing about it in the discharge of his daily duties, came in contact with the electrified surface and received a serious injury. It was held that the humble calling of the plaintiff should have suggested to the master the servant's ignorance of electricity and its dangers, and that under the circumstances of the case there was an absolute duty upon the master to instruct the servant, at the time of his employment, of the dangers to which he might be exposed, and to avoid contact with any part of the machine.

3. —— *Servant's Assumption of Risk.* The servant is not under duty to inspect the machine about which he works, or the place in which he works, to discover defects which are not obvious.

4. —— *Contributory Negligence*, is a question for the jury.

5. INSTRUCTIONS, as to the duty of the master towards the servant and his liabilities, commended.

*Appeal from El Paso District Court.* HON. J. W. SHEAFOR, Judge.

Mr. HORACE G. LUNT, Mr. ORLANDO B. WILLCOX, Mr. MICHAEL B. HURLEY, for appellant.

Messrs. Chinn & Strickler, Mr. J. Alfred Ritter, for appellee.

Hurlbut, J.

Action by appellee (plaintiff below) against appellant (defendant) for injuries sustained while in defendant's employ.

The evidence tends to show that on August 25, 1907, defendant employed plaintiff in its printing establishment as janitor, and that among other duties assigned him was that of daily sweeping out a room known as the "ad" room, in which was located an electric type-metal cutting machine, to which was attached a saw used in trimming the type-metal for the linotype machines. The scraps or trimmings fell to the floor under the machine, and plaintiff was required to remove them daily. While he was engaged in removing these scraps, on August 29th, his head came in contact with the machine, and he received serious injuries from the electric current passing through the machine. The machine had a base of about eighteen inches in diameter, and extended up in cone shape to the height of a man's waist. On top of the pedestal was a platform upon which the metal was placed in order to be moved against the saw to be trimmed. About half way up the pedestal was a lever which turned the current on or off from the machine. Under the said top was a starting box, near which was a lever which moved to the right or left, to start or stop the saw as desired. It was the custom of the employees to leave the switch on the pedestal open when quitting work, thus permitting the current to pass into the machine. No evidence was offered by defendant at the

trial. There is no evidence that any one saw plaintiff just at the moment of the accident, but he was, discovered by defendant's employees almost immediately thereafter. Smoke was seen by them, coming from the machine, and at the same time they detected a disagreeable odor as of burning flesh. One employee was only five feet from plaintiff when he was injured. Plaintiff's head was held tight against the starting box by the electric current, and fell away only when the fuse was jerked out of the fuse box on the wall. The evidence is undisputed that plaintiff did not know the cutting machine was operated by electricity, nor had he been informed by defendant of that fact, neither had he in any way been cautioned as to the necessity for care on his part in picking up the scraps from around the machine, nor of any danger connected therewith.

As we read the evidence it is improbable that the accident would have occurred had the current been turned off at the switch in the pedestal when the other employees ceased work for the day.

Appellant contends that grave error was committed by the trial court in giving certain instructions to the jury and in refusing to give others requested by it.

The jury, among other things, were instructed that there was no presumption that the defendant was negligent; that before plaintiff could recover they must find, from a preponderance of the evidence, that the injuries sustained by him were proximately and directly the result of the negligence of defendant; that even if they found the defendant guilty of negligence, still, if the plaintiff could have avoided the accident by exercising ordinary care,

the verdict should be for defendant; that plaintiff was to be regarded as having assumed all risks naturally and reasonably incident to the service in which he was engaged, and those arising from dangers which were open and obvious, or which would have been known to him had he exercised reasonable care; that, in order to entitle plaintiff to recover on account of defendant's failure to instruct him in regard to his duties or the dangers relative to said machine, he must establish, first, that defendant was chargeable with actual or constructive knowledge of the risk or danger existing, and that plaintiff was likely to be injured by coming in contact with the machine, second, that at the time of the injury plaintiff did not know and could not have learned by exercise of ordinary care that danger or risk existed, third, that defendant knew or ought to have known that plaintiff was excusably ignorant of the risk, and by reason thereof was exposed to abnormal hazard; and that it was the duty of the master to exercise ordinary care in seeing that his servants were provided with a reasonably safe place in which to work, and to exercise the same care in maintaining such place in a reasonably safe condition, but that such duty does not amount to warrant of perfection in such places, or a guaranty on defendant's part of absolute safety, etc.

If these instructions are measured by the authorities cited by appellant it will be found that they are well within the law as therein laid down.

The record indicates that the lower court paid close attention throughout the trial and exercised a high degree of care in conducting the proceedings, and particularly to the settling of the instructions.

In fact defendant's rights throughout appear to have been carefully guarded. A careful perusal of the record and briefs convinces us that the court's rulings are supported by reason and authority.

Appellant also contends that the complaint as drawn founds the action solely upon the statement that the cutting machine was in a defective condition and out of repair, and that by reason thereof defendant was negligent and the injury to plaintiff occurred. Were this the case appellant's position would be sound, and a reversal of the judgment would necessarily follow. But on reading the complaint we find counsel are in error in assuming the facts to be as claimed. In paragraph four of the complaint it is alleged that prior to and after plaintiff's employment the cutting machine had been in a defective condition and out of repair, that the insulation thereof and wires attached thereto were so defective as to permit the current of electricity used in operating same to be transmitted to any one coming near or in contact with any part of the machine, but nowhere in the paragraph is it alleged that this constituted negligence on the part of defendant. In paragraph six, however, it is alleged that it was the duty of plaintiff, every afternoon, after employees ceased work, to remove the pieces of metal filings from around and under the machine; that while he was so engaged on the afternoon of August 29th, defendant had not turned the current off in said machine, but had carelessly and negligently left the same turned on, thereby causing a dangerous current of electricity to pass through it; that defendant had thereby, negligently and carelessly, greatly increased the hazard and danger to any one coming

near or in contact with same; and that, while the machine was defective and out of order as stated, and while the current was passing through the same, plaintiff, while performing his duties, came in contact with the machine and sustained the injuries of which he complains.

Appellant calls our attention to the two following cases. In *Elkton Con. M. & M. Co. v. Sullivan*, 41 Colo., 241, it was alleged in the complaint that the negligence of defendant consisted in permitting a defective jog to remain in the shaft at a certain point; that the cage struck said jog in ascending the shaft and jarred a piece of steel from the arms of the deceased, which caught in the side of the shaft and threw him against the cage and killed him. The evidence showed that the accident did not occur at the jog, that the cage was running smoothly at the time, and that the injury occurred by reason of the steel slipping out of defendant's hand. The court held that, "in an action for negligence, the plaintiff must be confined to the acts of negligence alleged and the results thereof whereby injury was caused as stated in the complaint."

In *Denver Con. E. Co. v. Walters*, 39 Colo., 301, it was held that plaintiff could not allege negligence in defendant for not properly insulating wires leading into a dwelling house, and sustain the action by proving the wires were not established in a safe and proper place, holding to the same rule announced in the Elkton case, *supra*.

We do not think these cases are in point. The evidence in the case at bar was clearly applicable to, and tended to support, the charges of negligence stated in the complaint.

Appellant also contends that under the circumstances of this case the law imposed no duty on defendant to instruct plaintiff as to his duties or as to any probable danger which might exist in the performance thereof. The law imposes a well recognized duty on the master to instruct or warn the servant as to his work where danger attends the performance thereof. But this rule is not applicable in all cases of employment. If the services to be performed, and the place of their performance, are subject to unusual risks or dangers, which are not obvious, but such risk or danger is known, or by the exercise of reasonable care on the part of the master should have been known to him, and a reasonable presumption exists that the risk or danger would not be reasonably within the knowledge of the servant in the performance of his duties, then, the rule obtains. The general rule applicable to the subject is well stated in sec. 141, vol. 1. Labatt, Master and Servant, viz.:

"It is the duty of the master having control of the times, places and conditions, under which the servant is required to labor, to guard against probable danger in all cases in which that may be done by the exercise of reasonable caution. He is therefore negligent if, in the ordering of his business and the selection of his plant, he fails to provide for contingencies which are likely or unlikely to occur. He is bound to take into account the limits of the mental and physical capacity of his employees. This obligation in some instances can only be discharged adequately by properly instructing the servant. * * * He is also deemed to fall short of the required standard of care if he leaves fixed objects in such a

position that, although not ordinarily dangerous, some particular class of employees would be injured if a certain conjunction of circumstances; reasonably to be anticipated in the course of their employment, should intervene," etc.

To the same effect, sec. 4055, vol. 4, Thompson on Negligence.

In the case of *Denver Tramway Co. v. O'Brien,* 8 Colo. App., 74, the court approves of the following rule:

"It was the duty of the appellant to provide premises that were reasonably and ordinarily safe for the performance of the work which the appellee was employed to do; or if there were hidden or lurking dangers connected with the performance of such work, known to the company, and unknown to him, it was the clear duty of the company to inform him of the existence of such danger."

These authorities are pertinent to the facts of this case. The court's instructions on this question were unusually clear and sound.

The plaintiff, a man of limited education, pursuing a menial calling (which of itself should have suggested a lack of knowledge of electricity or general business and commercial operations), was assigned the duty of daily cleaning up metal scraps from under and around an electric cutting machine. No part of it was in motion, and nothing about it in repose would suggest to him any danger or risk whatever. The evidence is undisputed that he had never before worked around machinery run by electricity and did not know that this machine was so operated; nor had he any warning or instruction from defendant as to avoiding contact with any part

of the same while cleaning up the scraps. Under these circumstances, it certainly cannot be said that the law would presume this simple servant to be possessed of sufficient intelligence or experience to realize or appreciate that this motionless, inoffensive looking machine was charged with a silent, potent fluid, which might mean death or serious injury to any one coming in contact with it. On the other hand the admitted facts seem to justify a conclusive presumption of law that, under the circumstances of this case, it was the absolute and unqualified duty of defendant to have warned plaintiff at the time of his employment of the danger existing, and to have specially instructed him to avoid contact with any part of the machine while cleaning up the scraps from under it. The evidence is uncontradicted that even the employees of defendant, while operating the machine, turned off the current at the pedestal when it became necessary for them to go thereunder for the purpose of releasing the machine from the accumulated trimmings which seemed to have impeded its operation from time to time. Defendant for a long period prior to the accident had operated this machine through employees having knowledge of the methods and agencies used in and about such operation.

The law is well settled in this state that the master shall at all times use reasonable care in providing reasonably safe machinery and appliances for the use of its servants, as well as a reasonably safe place for the performance of their duties.

*Grant et al. v. Varney,* 20 Colo., 329. *Wells et al. v. Coe,* 9 Colo., 159. *Colorado F. & I. Co. v. Gardner,* 121 Pac., 680 (Colo. C. A.)

The jury, under the instructions given them, must necessarily have found that defendant failed to observe this salutary admonition of law.

Further answering appellant's contention, it can be said that in this state questions of contributory negligence are for the jury. The instructions given them on that point are free from criticism. The verdict of the jury disposed of this issue against appellant. *Colorado Midland Ry. Co. v. O'Brien*, 16 Colo., 219.

Appellant's counsel have ably discussed the question of assumption of risk. The rule laid down by our supreme court is:

"An employee assumes all the risks naturally and reasonably incident to the service in which he engages, and those arising from defects or imperfections in the thing about which he is employed that are open and obvious or that would have been known to him had he exercised ordinary diligence," etc. *Monarch M. & D. Co. v. De Voe*, 36 Colo., 270.

"There is no rule which imposes upon a servant the duty of making an inspection or examination for the purpose of discovering defects which are not open and obvious. The exercise of the ordinary diligence imposed upon an employee does not extend to this length," etc. *Burnside v. Peterson*, 43 Colo., 382.

The rule is supported by Labatt, Master and Servant, page 1137; *Miller v. Inman, Poulsen & Co.* (Oregon), 66 Pac., 713; *Huddleston v. Lowell Machine Shop*, 106 Mass., 282.

The evidence is conclusive that the starting box, against which plaintiff's head was pinned, was underneath the top of the machine, practically out of

vision to one standing on his feet. Neither the box nor dangers lurking therein were obvious to plaintiff. Notwithstanding the fact that the current could have easily been turned off by the employees, at the pedestal, after work, a custom had been permitted to become established of leaving the current turned on. This was directly charged by plaintiff as negligence on the part of defendant and the proximate cause of the injury. The instructions to the jury on this question were guarded, and amply supported by the facts and sound law.

After careful scrutiny of the record we fail to discover any prejudicial error in the rulings of the court concerning the admission or rejection of evidence at the trial.

The judgment will be affirmed.

*Judgment Affirmed.*