[No. 3559.]

## COLORADO FUEL & IRON CO. v. HAWKINS.

1. MASTER AND SERVANT—*Duty of Master as to Place of Work.* It is the duty of the master to use diligence to keep his premises in reasonably safe condition, so that the servant may not be exposed to unnecessary risks; and this duty extends to the provision of reasonably safe ways for passing to and from the place of labor.

2. —— *Servant's Assumption of Risk.* An employee assumes all the risks naturally and reasonably incident to the service in which he engages, including those arising from defects in the thing about which he is employed, which are open and obvious and would have been known to him if he had exercised ordinary care.

3. —— —— *Presumptions.* Action for negligence resulting in the death of the husband of plaintiff. Deceased had been employed at the

place where he came to his death for seven months, and was a man of more than ordinary intelligence. All the conditions complained of were permanent and obvious, and had subsisted during all his employment. *Held* a necessary presumption that deceased knew of these conditions, and appreciated the dangers to which he was thereby exposed.

4. —— *Contributory Negligence of Servant.* Deceased was killed while attempting to cross a railway track where a car was continually passing and re-passing. There was a definite and certain passage-way provided, where employees might cross the track. The car was standing at a furnace elevator where it had been discharging its contents and was liable to move at any moment in either direction. It was broad day, and the deceased knew all these conditions. Nevertheless, of his own motion, without any necessity, and without the command of any superior, he attempted to cross the track at an unusual place, where he could not be seen by the person operating the car. *Held* there was no room for substantial doubt that the deceased came to his death by his own negligence.

5. APPEAL—*Judgment.* The facts being undisputed and the court being of the confident opinion that no verdict against defendant could be sustained, a judgment for plaintiff was reversed and the court below was directed to dismiss the action.

*Appeal from Pueblo District Court.* HON. C. S. ESSEX, Judge.

Messrs. DEVINE & PRESTON, Mr. FRED HERRINGTON, Mr. CASS E. HERRINGTON, Mr. H. C. VIDAL, for appellant.

Mr. J. C. ELWELL, Mr. S. R. DURHAM, Mr. G. W. COLLINS, Mr. W. J. KERR, for appellee.

KING, J., delivered the opinion of the court.

The plaintiff, Grace Hawkins, brought this action as the widow of W. S. Hawkins, to recover damages for the death of her said husband, an employe of the Colorado Fuel and Iron Company, appellant herein. Said Hawkins was struck and killed on the 27th day of February, 1907, by a car then operated by the defendant company at its iron and steel works at Pueblo, Colorado. At the time of the injury he was foreman of steam-pipe fitters, and his duties were confined to the blast furnace depart-

ment. This department consisted of six furnaces, in connection with which was a system of bins containing ore, lime-rock for flux, and coke for fuel. This system of bins extended north and south for a distance of about eighty rods. At intervals corresponding with the locations of the six furnaces were "skips," or elevators, extending from the bins and the railroad track hereinafter mentioned, upward, a distance of perhaps one hundred feet, and used for carrying ore, flux and fuel to the top of the blast furnaces. The bins were elevated about nine feet from the ground and supported by iron pillars about twelve feet apart. At the base and on the west side of this system of bins, a line of track, consisting of steel rails and wooden ties, was constructed, upon which was operated by said defendant company, a car propelled by electricity by means of an overhead trolley system. This car was called a "scale car," and was controlled and operated from the south end only. It contained a hopper or bin which was filled from the several stationary bins with ore, fuel or flux, as might be needed, which was carried to and discharged into the "skip," or elevator, to be elevated to the blast furnaces. It had no fixed schedule of time for running, but ran north or south, back and forth, as required in receiving and delivering the various materials used for feeding the blast furnaces, and was in continuous operation, day and night. The space underneath the bins and between the pillars supporting the same was not fenced off from the track, and employes could, and sometimes did, pass under the bins beneath the pillars, and cross said track going to or from their work, and this fact was known to the company. At various places along this system of bins the company had constructed regular passage-ways for employes, including steps leading from the lower ground on the east, up to the railroad track, and in which, immediately before entering upon the track, were placed turnstiles, upon

which was painted in large letters, "look out for the cars." One of these passage-ways so arranged was situated about twenty-five feet south from the skip to furnace D. The point where Hawkins was killed was about twenty feet north of that skip. On that day he, and two pipe-fitters under his direction, had been engaged in repairing a pipe on the trestle of the skip leading to furnace D. While the car was engaged in discharging a load into this skip, Hawkins, the foreman, went east of the bins to a rigging-house for some purpose not clearly indicated, and his two assistants sat down on a sill opposite the skip and west of the track. Hawkins, instead of returning through the regular passage-way, climbed over a stone wall four feet and three inches high to the ground underneath the coke bins, and, traveling westward, stepped onto the track from beneath these bins just as the car, leaving the skip, passed the point at which he stepped upon the track. Hawkins was struck by the car, dragged twenty-five or thirty feet, after which the car ran over his body. He was instantly killed. The evidence further shows that said Hawkins was a young man, twenty-nine years of age, of more than ordinary intelligence; that he had been working for the defendant company as foreman of its steam-pipe fitters, in and about said blast furnace department, for the period of seven months prior to the accident; that his duties called him to work at different places, from time to time, throughout said department, as necessity might require, and that he had frequently passed and re-passed over and across the tracks mentioned, and in and about the ore bins and through the regular passage-ways mentioned, as well as through and between the pillars where there were no passage-ways provided; that he knew of the operation of the said car, and its structure and manner of operation, and the construction of the works which had been the same during all the time of his employment and for

a number of years prior thereto; that at the time of the accident he was seen by his assistants returning from the rigging-house between the pillars and under the coke bins, which differed from the ore bins in that they were provided with dust pockets and spouts extending much nearer to the ground than the bottoms of the ore bins. He had a coil of rope around his shoulder and was walking with his eyes to the ground, apparently in ignorance of the approaching car. His assistants, seeing him about to step upon the track in front of the moving car, shouted a warning which he did not heed, and apparently did not hear. There was much noise caused by the blast furnaces and escaping steam. The two employes, assistants of deceased, testified that they were well acquainted with all of the conditions of construction and operation of the blast furnace department; that they knew the risk and danger of crossing the track, and seldom, if ever, did so without stopping and looking for a car, and knew that if they entered upon the track without such precaution they were taking their own chances, and that they appreciated such risk. It appears that the person operating the scale car with the controller on the south end could see persons upon the track, or entering thereon, a distance of perhaps fifty feet north from where he stood, but because of the hopper and construction of the car he could not have seen deceased stepping upon the track at the point where he was killed.

The complaint charges generally that the defendant was guilty of negligence in failing to provide a reasonably safe place in which the said Hawkins was to perform his duty, and specifically states the negligent acts to consist (1) of operating the said trolley system in combination with the location of said bins and passage-ways; (2) in negligently failing to equip said ore car so that it could be operated from either end, so that the motorman could observe the danger to which the company's employes were

subjected in attempting to cross the track; (3) in not equipping said car with a fender which, it is alleged, would have been a protection to the said Hawkins and would have prevented the injury; (4) in operating the system without fencing off and preventing the use of all passage-ways, except the one adjacent to the skip where the car usually stopped; (5) in not fencing off all of said passage-ways and adopting some regular crossing, and placing therein an electric bell to warn employes of the approach of the car; or (6) in not stationing a watchman at some regular crossing whose duty it would be to warn the employes, and especially the said Hawkins, of the danger of the approaching car. Plaintiff further alleges that all of said particular acts of negligence combined and concurred in causing the injury and in rendering the place where the said Hawkins was called upon to perform his labor dangerous and unsafe, and alleges that all of these things were well known to the defendant company long prior to the injury. It is not alleged that the conditions were not well known to the said Hawkins, but the complaint does allege that in the discharge of his duties he was compelled to pass and re-pass over said track, and "was wholly ignorant and unconscious of the extreme dangers to which he was being subjected in crossing said track."

The defendant answered, admitting that the said Hawkins was an employe of the defendant company and was struck and killed by an electrically propelled car just as he stepped upon the track on which it ran, and denying all other allegations of the complaint; and for further defenses alleged that said Hawkins was guilty of contributory negligence, the proximate cause of the accident; and that the said Hawkins, at and before the happening of the accident, knew, or in the exercise of ordinary care should have known, of the alleged negligence of the defendant complained of, and of all the facts, circumstances

and conditions, and of the risks and dangers incident to his labor under such circumstances and conditions, and voluntarily assumed such risks and dangers. Other defenses alleged are not necessary to consider. The new matter of defense was put in issue by reply. The jury returned a verdict for the plaintiff in the sum of $1,500, upon which judgment was entered, from which defendant appealed.

We think some of the exceptions to the instructions given by the court are well taken; but because of the view we take of the case, as hereinafter expressed, it will be unnecessary to call attention specifically to any of the many specifications of error. The cause was submitted to the jury with instructions generally to determine, first, whether the defendant was negligent in its duty toward said Hawkins in failing to provide for him a reasonably safe place in which to perform his work; second, whether said Hawkins assumed the risk of his employment; third, whether he was guilty of contributory negligence.

The facts in the case are undisputed. All the evidence introduced was that upon the part of the plaintiff, with the exception of proof as to the correctness of the model of that portion of the system of bins and track at or near which the accident occurred. Nor is there conflict in the testimony of plaintiff except the slight difference which usually appears in the testimony of different witnesses truthfully relating their understanding of occurrences witnessed by them. Therefore, the consideration of the case is upon undisputed facts and inferences to be deduced therefrom, and this court must determine whether, from such undisputed facts and the inferences legitimately deducible therefrom, the verdict and judgment can be sustained.

1. Upon the question of the sufficiency of the evidence to sustain the finding of the jury that the defendant was negligent in that it failed to provide for the said

Hawkins a reasonably safe place in which to perform his labor, we need express no definite conclusion for the reason that, conceding, but not deciding, that in some of the matters specifically charged as negligence upon the part of the defendant, or in the combination or concurrence of all the conditions therein specified as negligence, the evidence was sufficient to show a default by the defendant in its duty toward the deceased in providing for him a reasonably safe place in which to perform his labor, nevertheless, we think the undisputed facts and all legitimate inferences to be drawn therefrom clearly establish an assumption of the risk by deceased, and contributory negligence upon his part, which was the proximate cause of the injury resulting in his death, and without which the accident would not have occurred. We think it proper to state, however, that in our opinion there is grave doubt as to the sufficiency of the evidence to support the verdict upon the charge of defendant's actionable negligence resulting in injury to deceased in the absence of any other defense than the general denial of negligence.

No question is made as to the contention that the employer must exercise ordinary care to provide a reasonably safe place in which the employe may perform the services required of him, and that it is its duty to use diligence to keep its place in a reasonably safe condition so that the servant may not be exposed to unnecessary risk, and that such duty extends to the provision of reasonably safe ways for passing to and from the place of labor (*Gregoric v. Percy-La Salle M. & P. Co.,* 52 Colo., 495, 122 Pac., 785), and that such was the duty of the defendant in this case. That such is the law in this state is established by an unbroken line of decisions, a brief resume of which is given by Walling, Judge, in *Great Western Sugar Co. et al. v. Parker,* 22 Colo. App., 18, 33.

2. There is no necessity of going beyond the decisions of our own courts to ascertain the law of assumed

risk applicable to the circumstances of the present case. It has been repeatedly and uniformly held that an employe assumes all the risks naturally and reasonably incident to the service in which he engages, and those arising from defects or imperfections in the thing about which he is employed, which are open and obvious, and which would have been known to him had he exercised ordinary care and diligence. By voluntarily continuing in the service with knowledge or means of knowledge equal to his employer's, of any defect in the appliances or the machinery used, without objection, or promise on the part of the employer to remedy the defect, the employe assumes all the consequences that result from such defect and waives the right to recover for any injury caused thereby.—*Denver Tramway Co. v. Nesbitt*, 22 Colo., 408; *Kent Mfg. Co. v. Zimmerman*, 48 Colo., 388, 400; *Wells v. Coe*, 9 Colo., 159; *Great Western Sugar Co. et al. v. Parker, supra; Colorado Springs Gazette Co. v. Simmons*, 22 Colo. App., 303; *Gregoric v. Percy-La Salle M. & P. Co., supra.*

The evidence in this case clearly shows that all the conditions complained of, whether defective or otherwise, were permanent, and had been the same during the entire seven months of Hawkins' service, and that they were open and obvious; that the deceased had every opportunity to observe these conditions and was thoroughly acquainted with them. Counsel for appellee admits that the alleged defective construction of the car, and failure to fence off all passage-ways but one, or to keep a watchman or provide an electric bell, were obvious to any intelligent person and well known to deceased, but insists that it is not shown and cannot be assumed that Hawkins apprehended or appreciated the danger. The testimony shows that his co-employes, in positions subordinate to his, and under his direction, understood, appreciated and guarded against the risk and danger. The danger was

as open and obvious to ordinary intelligence and prudence as the conditions themselves, and we think it not only a reasonable but a necessary presumption that the deceased, who was shown to be a person of more than ordinary intelligence, not only knew all the conditions, but appreciated the danger and risk occasioned thereby. Furthermore, it clearly appears that a regular crossing had been provided in which a turnstile was placed which was itself a warning and upon which was placed a constant warning. By declining to use this passage-way and voluntarily adopting another and more dangerous one, by reason of its situation and lack of warning, he clearly assumed the risk.

3.   Upon the question of the contributory negligence of the deceased, and that such was the proximate cause of his injury, without which it would not have occurred, the evidence seems to be full and clear and the conclusion irresistible. We are not unmindful of the well-recognized rule clearly stated and applied by Mr. Justice Elliott in *Lord v. Pueblo Smelting & Refining Co.*, 12 Colo., 390, that if the evidence be contradictory in any substantial matter upon the question of contributory negligence, or, when there is any conflict in the testimony bearing upon that subject, or the determination of the question depends upon the inferences to be drawn from a variety of facts and circumstances in the consideration of which there is room for a substantial difference of opinion between intelligent and upright men, then the question should be submitted to the jury under proper instructions. But, in this case, as has been said, there is no conflict in the evidence nor dispute as to the facts, and we are convinced that upon the inferences to be drawn from the facts and circumstances in evidence, there is not room for a substantial difference of opinion, and that from such facts, circumstances and inferences, if the jury had understood and observed the instructions of the court, it must neces-

sarily have found that the negligence of the deceased not only contributed to, but in every substantial sense was the sole cause of, his injury. He was in the employ of the defendant as overseer of workmen. He was familiar with the premises where, and the construction and operation of, the machinery by which he was injured. He knew that the car was being employed according to the usual custom at the time and place of the accident, in receiving and unloading materials for the furnaces. He understood that there was a definite and certain passage-way provided for the use of employes in crossing the track. Under the circumstances shown, to attempt to cross the track at the point where he was injured was a perilous undertaking, and we must presume that he was aware of the danger. As was said in *Lord v. Pueblo Smelting & Refining Co., supra*, "It was broad daylight, and he was acting under no command or direction of any superior. Even if defendant's failure to provide a safe passage-way for its employes from one part of the works to another was a neglect of duty, the plaintiff knew of such neglect, and voluntarily remained in the service of the defendant without any promise on its part to remedy the same." Furthermore, we have discovered nothing in the evidence which shows or even suggests the necessity for deceased to cross the track at the time and place of the injury. The skip which he had been engaged in repairing was wholly on the eastern side of the track, and when returning from the rigging-house to his work he was upon the same side of the track, and the evidence seems to conclusively show that from the direction in which he came he could readily have reached the place of work without crossing or entering upon the track; and for these reasons we are strengthened in the conviction of the correctness of our conclusion, both as to the assumption of risk by, and the contributory negligence of, the deceased.

The tendency of modern thought is, we believe, that the public welfare demands a modification, or perhaps an abrogation, of the rule of assumed risk in hazardous industrial occupations. This growing sentiment is being crystalized into law by the legislatures of many of the states. With it we are in full accord, and believe such legislation wise, both for employer and employe, and for the state, which is always and most vitally interested. But under the law as we find it, and as settled by the courts of appeal of this state from the earliest declaration down to the present time, this court has no right to abrogate the rule, for such would be judicial legislation, nor to permit a jury to abrogate it by returning a verdict obviously against the evidence and the instructions of the court. The trial court should have set aside the verdict. Believing that no good will result from a new trial, as, under the evidence, no verdict against the defendant could be sustained, the judgment appealed from will be reversed, and the cause remanded to the district court with directions to dismiss the same.

*Reversed and Remanded.*